THE PEOPLE v. RICHARD WALTERS.

*Criminal law—Larceny—Charge to jury.*

Where upon the trial of a respondent for larceny the undisputed testimony showed that a *portion* of the goods found in his possession were stolen goods, which *fact* he could not and did not deny, but sought to explain such possession, the court committed no prejudicial error in stating to the jury that *such fact* was admitted, nor in refusing to instruct them that such possession was only presumptive evidence of respondent's guilt; respondent's theory and testimony having been submitted to the jury, with instructions, that if they raised a reasonable doubt in their minds as to his guilt, it was their duty to acquit.

Exceptions before judgment from Newaygo. (Palmer, J.) Argued June 20, 1889. Decided July 11, 1889.

Respondent was convicted of larceny. Conviction affirmed, and court directed to proceed to judgment. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*M. W. Underwood,* for respondent.

*S. V. R. Trowbridge,* Attorney General, and *George Luton,* Prosecuting Attorney, for the people.

MORSE, J. The respondent was convicted in the Newaygo circuit court for the larceny of certain goods claimed to have been stolen from the store of James C. Townsend, in the village of White Cloud.

The respondent was arrested at Grand Rapids, under the following circumstances, as shown by the proofs on the trial: On the fourth or fifth of January, 1889, he and another man went to the second-hand clothing store of Mr. Hyman, at 141 Canal street, and offered some goods for sale. The goods

were in a satchel.   The other man brought the satchel in,
and opened it to show the goods.    Both of them were
engaged in the attempt to sell.   Hyman testified that the
respondent, among other things, said that Hyman need not
be afraid to buy them; that they got the goods an hundred
miles east; he thought "they would not be down to it;"
and, if Hyman bought these, they would bring him some
more.    They offered to sell the goods in the satchel for $10,
but Hyman pretended that he had but $3.    They were will-
ing to sell for the $3 cash, and to trust Hyman for the bal-
ance, but he told them he would not buy unless he could pay
cash in full for them.

No purchase was made, and when they left the store the
other man carried the satchel.

They then went to another second-hand clothing store at
115 Canal street.   Here they were arrested.   At the time of
the arrest the respondent had the satchel.   He carried it to
police headquarters.   The officer who made the arrest testi-
fies that respondent said the satchel belonged to him.   He
said he obtained it somewhere near Detroit.

Some of the goods, about $10 worth, were positively
identified by Mr. Townsend as his property, some of them
having his private mark upon them.   As to the balance, he
testified that they were similar to those that he had lost, or
had been stolen from him.   The goods in the satchel were
worth at least $50.

The store of Mr. Townsend was pillaged on the night of
January 1, 1889, and the property stolen in all amounted to
about $100.

The respondent, upon the trial, gave testimony in his own
behalf explanatory of his possession of the goods found in
the satchel.   He admitted that the satchel belonged to him,
but testified that he was a peddler, residing at present in
Detroit, and had never been at White Cloud in his life.   He
claimed that the man who was with him at Hyman's store

was one he met at a lodging-house on the west side in Grand Rapids. He was introduced to him as another peddler. This man proposed going to Hyman's. Said he had sold goods there before, and wanted respondent to go with him. The goods belonged to this man, who put them in respondent's satchel at the lodging-house, before going to Hyman's, because it was larger than his own. This man carried the satchel and the key to Hyman's. When they came out of Hyman's he asked respondent to carry the satchel, which he did. He went to Hyman's to help this man sell the goods. He claimed that he made no representations there as to where the goods came from. It was the other man who said they came from an hundred miles east. The respondent told Hyman that, as far as he knew, they were all right and straight. He claims that when he left the lodging-house he did not know what was in the satchel, as he did not see the man fill it. He testified that he had been in Grand Rapids but one night, coming in from Detroit, having walked all the way selling button-hooks, patent button-fasteners, and such little articles. He admitted that he told the officer who arrested him that the goods and the satchel were his. He says he claimed the goods were his, because they were for the time being, as he then had possession of them.

The man who was with him escaped. The respondent claimed he had been acquainted with him for four years, but does not tell his name.

It is claimed that the court erred in stating to the jury in his charge as follows:

"Now, there are some facts not controverted; that a store was broken into on the night of January 1, and some goods taken, is not a controverted fact, but an admitted fact in the case.

"There is no direct testimony that this man was in the village of White Cloud January 1, or at any other time. The fact that three or four days thereafter—I think on the fourth of January—certain goods, which have been exhibited here.

and identified by Mr. Townsend as being his goods, and
goods taken from his store on the night in question, were
found in the possession of the defendant and another party,
who accompanied him to a certain store in Grand Rapids, are
admitted facts.   Now, the respondent admits virtually what
the witnesses have testified to in that regard; but he has a
theory concerning the matter, and attempts to explain to you
this possession.   You have the right to consider that, and it
is your duty to consider it in weighing the evidence, and
arriving at a conclusion.''

It is contended that the circuit judge in this statement
violated the fundamental rule that the weight of the evi-
dence, and the credit to be given to the testimony, is exclu-
sively for the jury to determine.

Under the proofs in this case the court committed no
prejudicial error in this statement.   The stealing of these
goods by some one could hardly be disputed.   No jury would
have been authorized in finding that there had been no lar-
ceny of them.   Some of them were identified beyond cavil
as being part of the stolen property belonging to Mr. Town-
send.   And the fact is plain from the record that the respond-
ent did not deny, and could not deny, that the goods identi-
fied by Mr. Townsend were his, and stolen from him.   The
only defense he made, and the only possible defense he could
make under the circumstances, was that he knew nothing
about them, and that they were put in his satchel, and car-
ried to Hyman's store, and offered for sale by the man who
was with him.

The court took his explanation and presented it to the
jury, and told them, in substance, that if they believed it, or
had a reasonable doubt in regard to it,—could not say it was
untrue beyond a reasonable doubt,—it was their duty to
acquit him.   This was all the respondent could ask under
the proofs.

The court was asked to instruct the jury that—

"The mere finding of stolen goods in the possession of
another is only presumptive evidence that the person stole

them, and such presumption can be rebutted by testimony."

The court said:

"I don't think the rule would apply in this case, because the fact is admitted here that the party was in possession of the property, and he attempted to explain the possession."

As an abstract proposition of law the request was correct, and might have been given with propriety, as applied to this case.

But when the court told the jury, as he did, that the respondent was a competent witness in his own behalf, and was allowed to give his theory of the case, and the jury had a right to consider it the same precisely as they would the testimony of any other witness on the stand; and further, that—

"If the theory advanced upon the part of the accused, and the testimony given by him, in view of all the facts and surrounding circumstances of the case, raises in your minds a reasonable doubt as to his guilt or innocence, it is your duty, as jurors, to solve that doubt in favor of the respondent, and by your verdict acquit him,"—

We think the jury could not have been misled as to their duty in the premises. They must have understood that they were not to convict him simply because the stolen property was in his possession, but, starting with that possession, to listen to his explanation of such possession. If they believed such explanation false beyond a reasonable doubt, it was their duty to convict him; if not, they must acquit him. This must have been their understanding of the court's direction, and this was the whole case in a nutshell, and all there was of it.

There is no error in the record, and the conviction is sustained.

The other Justices concurred.