## PEOPLE *v.* TUTHA.

1. CRIMINAL LAW—NEW TRIAL—DISCRETION OF COURT.
   Matter of granting a new trial in a criminal case is in the discretion of the trial court, where motion therefor is unsupported by proofs.

2. SAME—ABSENT ALIBI WITNESS—EVIDENCE—CONTINUANCE.
   On motion for new trial because of absence of alibi witness, denial *held,* not an abuse of discretion where witness was a brother-in-law of defendant and had been confined to hospital for six days before day of trial and neither a certificate of physician or affidavit of his being in the hospital had been procured nor application made for further continuance.

3. WITNESSES—VOLUNTARY AND IRRESPONSIVE ANSWER.
   A voluntary and irresponsive answer to a proper question is not reversible error.

4. SAME—VOLUNTARY AND IRRESPONSIVE ANSWER—INSTRUCTIONS.
   In prosecution of one charged with unlawfully driving away automobile when matter of his identity at police identification bureau was being examined, answer of officer that upon request for photographs they were shown pictures of robbery men and safe men *held,* not error since it was a voluntary and irresponsive answer and court instructed jury to disregard it.

5. CRIMINAL LAW—EXCLUSION OF TESTIMONY—ESTOPPEL.
   In prosecution of criminal case the State may not exclude testimony and then claim failure of defendant to produce it was evidence of guilt.

6. SAME—ALIBI—COMMENT ON FAILURE TO PRODUCE WITNESSES.
   Prosecutor's questions to defendant, who took stand and claimed he could establish alibi by four named witnesses, if any of such witnesses were in court *held,* not reversible error as comment on failure to produce them as character witnesses or otherwise.

7. Automobiles—Possession—Instructions.

In prosecution for unlawfully driving away an automobile in which State produced testimony that defendant was seen in possession of car less than two weeks later but escaped officers then pursuing him, instruction that possession of stolen property was some evidence possessor had stolen it *held*, not error.

8. Criminal Law—Alibi—Burden of Proof.

Instruction to jury that prosecution must show defendant was at scene of crime and was guilty, given when jury had returned to courtroom and asked whether defendant should furnish witnesses to prove his alibi or whether prosecution should investigate it *held*, not error.

9. Same—Instructions—Alibi—Coercion of Jury.

Instruction to jury, on its second return to courtroom, in which court charged further upon question of alibi and, in sending them back to juryroom, added: ''If you don't determine it, somebody else will, but I don't want you to stultify your judgment in any way'' *held*, not error although it might well have been omitted.

10. Same—New Trial—Coercion of Jury—Affidavits.

Affidavit of bystander that when foreman informed court officer the jury was unable to agree, that officer told foreman the judge was not there and the sooner they made up their minds the sooner they would get out, followed by announcement of verdict in about three minutes *held*, insufficient basis for granting new trial where defendant's attorney examined officer at the time and officer's statement as to what was said disputed affidavit.

11. Verdicts and Findings—Impeachment—Affidavits of Jurors Out of Court.

Affidavits of jurors, made out of court after rendering a verdict in court, may not be heard to impeach such verdict.

12. Criminal Law—Miscarriage of Justice.

Verdict of guilty in prosecution of a criminal charge will not be set aside where it does not affirmatively appear the trial in the case resulted in a miscarriage of justice (3 Comp. Laws 1929, § 17354).

Appeal from Recorder's Court of the City of Detroit; Stein (Christopher E.), J.  Submitted April

16, 1936. (Docket No. 139, Calendar No. 38,557.) Decided June 16, 1936. Rehearing denied September 2, 1936.

Chester Tutha was convicted of unlawfully driving away an automobile. Affirmed.

*Frank B. Ferguson* and *Frank G. Schemanske,* for appellant.

*David H. Crowley,* Attorney General, *Duncan C. McRea,* Prosecuting Attorney, and *A. Tom Pasieczny,* Assistant Prosecuting Attorney, for the people.

POTTER, J. Defendant was arrested and informed against charged with having, April 12, 1935, wilfully and unlawfully and without authority, taken possession of and driven away a Hudson automobile, sedan, belonging to James H. Johnson. In a second count, he was charged with stealing, taking and carrying away the personal property of Johnson, to-wit, a Hudson automobile, sedan, as above described. No time of the commission of the offense is alleged in the second count. In the third count, defendant was charged with having, April 12, 1935, received stolen property, to-wit, the automobile first above described. Upon arraignment, defendant pleaded not guilty and his bond was fixed at $5,000. The case came on for trial May 28, 1935, and was continued until the next day, May 29, 1935, when the case was continued for trial until June 7, 1935, at which time defendant, by his counsel, moved for an adjournment because it was claimed one of defendant's material witnesses was in the marine hospital and unable to attend. No affidavit to support this motion, which was made verbally by counsel for defendant in open court, and no doctor's certificate

to sustain the same were presented to the trial court. No testimony was taken or offered in support of such motion. The motion was denied, a jury impaneled and the trial began, at the conclusion of which a verdict of guilty was rendered. Defendant was sentenced and brings the case here by so-called appeal, not by writ of error.

Defendant contends the trial court should have granted his motion for an adjournment upon the day of trial, or should have granted a new trial after conviction, for the purpose of permitting defendant to produce the witness whom he claimed was confined in the hospital; the trial court should have granted a mistrial because a witness for the people stated he had been shown pictures of robbery men and safe men in the identification bureau of the police department, and he identified one of them as defendant; that the court erred in permitting the prosecuting attorney to ask defendant whether or not a friend and "two other fellows" who saw him in a restaurant, and others who were said to have seen him in a poolroom, were in court; that the trial court erred in his charge to the jury, and in further charging the jury after further instructions had been requested; that the trial court erred in denying defendant's motion for a new trial because of alleged misconduct of the court officer and of the jury; and the trial court erred in denying defendant's motion for a new trial because the verdict was against the great weight of the evidence.

The proofs upon which defendant was convicted are substantially that James H. Johnson, the owner of a Hudson sedan, at about 7:30 o'clock in the evening, April 12, 1935, parked the same on Scovel avenue, Detroit, Michigan, and returned about 11:30 p. m. and his automobile was gone. He testified he

had given no one permission to drive it away. Three police officers in the city of Detroit, while driving a scout car on April 25, 1935, at 4:30 a. m. noticed an automobile going through a red light. They overtook it and discovered it had a license plate wired on of a particular number. They checked this number against the license plates of automobiles reported stolen, ascertained the license number was that of an automobile reported stolen, pulled alongside it and told the driver to pull to the curb. The driver of the automobile, thus hailed, looked around, swore and drove rapidly away. The officers in the scout car started shooting at the fleeing automobile and a gun battle ensued in which nobody was hurt. The automobile was found about two hours later abandoned. Johnson, its owner, identified the automobile as his. After the automobile and the occupants thereof got away on April 25th, the police officers went to police headquarters, examined some photographs, identified the defendant as the person driving the car, and later he was arrested and convicted.

1. Adam Ostrowski, a brother-in-law of defendant, is said to have conducted a Chrysler-Plymouth salesroom in Hamtramck, and lived in the same house with defendant. He was relied upon by defendant as an alibi witness and was confined in the hospital at the time the trial came on, having been operated on for appendicitis. Ostrowski filed an affidavit, attached to defendant's application for new trial, stating "that *on June 6th, he was taken to the marine hospital* for an acute appendectomy operation." Dr. J. H. Linson, the medical officer in charge of the marine hospital, in his affidavit, attached to defendant's application for a new trial, says "that Adam Ostrowski of 8935 Lumpkin av-

enue, was confined to the marine hospital from *1st day of June, 1935, to 22d day of June, 1935.*" If Ostrowski was in the hospital as the medical officer says, from June 1st to June 7th, defendant had ample time to make application for continuance and obtain the certificate of the physician or an affidavit of his being in the hospital. The matter of granting defendant's motion for a new trial, unsupported by any proofs, was a matter in the sound judgment and discretion of the trial court. We do not find he abused that discretion or that he erred in refusing to grant a new trial because of the absence of this witness.

It is claimed the defendant gave notice he would rely upon an alibi. There is nothing in the record which indicates this, and the calendar entries attached to the record do not indicate any such notice was ever filed.

2. When officer Peitz was on the stand, he testified:

"We went down to police headquarters that next morning, around 8:30 or 9:00 o'clock. We went to the identification bureau.

"*Q.* Did you identify the driver of the car?

"*A.* We asked for photographs and they showed us pictures of robbery men and safe men.

"*Mr. Kennedy:* Wait a minute, I ask that be stricken. I ask that the jury be instructed to disregard it.

"*The Court:* The jury will be instructed to disregard it.

"*Mr. Kennedy:* I also move for a mistrial.

"*The Court:* Deny the motion."

The claim this was error is also made one of the bases for defendant's motion for a new trial.

A voluntary and irresponsive answer to a proper question is not error. *Hill* v. *Robinson,* 23 Mich. 24; *People* v. *Wilson,* 133 Mich. 517.

"When a witness for any reason gives an irresponsive answer and which is not competent evidence, and the answer is suppressed at once, *the case must be a very peculiar and very strong one* which would justify a reversal for such fault or mistake of the witness." *Hill* v. *Robinson, supra.*

"A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge; and if what he does or says improperly is likely to do much mischief, it is presumed the judge will apply the proper corrective in his instructions if requested to do so. In this case he applied it on the instant, so far as ruling out the improper statement could do so; and no doubt he would have given specific caution to the jury if requested." *People* v. *Mead,* 50 Mich. 228.

In *People* v. *Rozewicz,* 228 Mich. 231, it is said:

"Defendant's counsel contend that striking the irresponsive and claimed prejudicial answer from the record could not eradicate its damaging effect from the minds of the jury and the ruling that the trial proceed 'forced defendant to take the stand to show the character of the offense for which he had been convicted.' The irresponsive answer which the court of its own motion struck out did not show that defendant was ever convicted of any offense. He voluntarily took the stand as a witness in his own behalf, not to show the character of the offense of which he had been convicted, but to show that he was not guilty of the offense with which he was charged."

This assignment of error is not well taken.

3. Defendant took the stand as a witness in his own behalf. He testified he was, in the early morn-

ing of April 25, 1935, not in the vicinity where the officers accosted the driver of the automobile in question but was attending a party at which several people were present; that he got up early in the morning the next day and met at a restaurant a man named Kapuschenski. He also testified he had been in other places where he met other individuals and the prosecuting attorney asked him if Kapuschenski was in court. Defendant also claimed he could establish his alibi by his brother-in-law who, the record indicates, was in the hospital. He was asked if his brother-in-law was in court. He claimed he could establish his alibi by his sister and he was asked if she was in court. He claimed he could establish his alibi by his mother and he was asked if she was in court. This is alleged to have been error. It is contended the prosecuting attorney may not comment on the failure to call witnesses to sustain the defendant's character; that it was error for the prosecuting attorney to comment upon the defendant's failure to produce witnesses. Reliance is had upon *People* v. *Boske,* 221 Mich. 129, and *People* v. *DeGoenaga,* 202 Mich. 503. The real gist of the latter case is thus stated:

"Irrespective of whether the court acted properly in excluding the testimony by which it was sought to explain the absence of the witness, the testimony having been excluded and the respondent having been denied the opportunity of making an explanation, it was clearly improper and highly prejudicial to respondent's case to allow the prosecuting attorney in his closing argument to dwell upon the failure to produce the witness and to insist that the failure to produce the witness in itself should be sufficient for the jury to find the respondent guilty."

It was not necessary any authorities be cited. The prosecuting attorney could not exclude the tes-

timony and then claim the failure of the respondent to produce it was evidence of guilt. The people contend defendant was asked whether these particular witnesses were in court or not and the prosecuting attorney had a right to ask those questions because he had a right to make an application to have the witnesses excluded from the court room during the time defendant was testifying. Regardless of this claim, apparently well founded, upon the part of the people, we do not think it was error for the prosecution to ask these questions. It does not appear the prosecuting attorney commented on the failure to produce these as character witnesses or otherwise.

4. Particular excerpts are taken from the charge of the trial court and error assigned thereon. Treating the charge as a whole, we think it fully and fairly protected the rights of defendant. The case was not submitted to the jury upon the ground of larceny or of receiving stolen property, but solely upon the ground of unlawfully driving away an automobile. The court did say in his charge that possession of stolen property was some evidence the possessor had stolen it. But he said:

"He is not charged with stealing this automobile, that count in the information has been abandoned by the State. He is merely charged with unlawfully driving away an automobile."

Possession of stolen property within a short time after it is alleged to have been stolen raises a presumption the party in possession stole it, and this presumption is either weak or strong depending upon the facts. Somebody stole Johnson's automobile. The officers found the automobile in possession of someone. It is claimed by the people defendant had possession of and was driving it. When

the officers asked the driver of the automobile to swing in to the curb in order that they might make inquiry, he stepped on the accelerator and ran away and the occupants of the vanishing car exchanged several shots with the police officers. This, to an ordinary individual, would raise some presumption that whoever had possession of the stolen car stole it. We think the charge of the court upon the question of the presumption arising from the possession of stolen property,—the automobile alleged to have been unlawfully driven away,—was warranted by *People* v. *Walters*, 76 Mich. 195; *People* v. *May*, 199 Mich. 574; *People* v. *Johnson*, 215 Mich. 221; *People* v. *Korn*, 217 Mich. 170.

5. The members of the jury, after they had been out for some time, were brought into court and stated they had not been able to agree upon a verdict. They were asked by the court whether it was a question of law or a question of fact that bothered them and, through the foreman, stated it was a question of fact. The trial court asked the foreman to inform the court upon what they desired information and the foreman replied:

"On the alibi.

"The question in our mind is whether the alibi of the defendant,—whether he should furnish witnesses to prove his alibi, or whether the prosecution should investigate it themselves."

The trial court then charged that it was not incumbent upon the defendant to prove his innocence in any way, but it was the duty of the State to prove his guilt:

"If he claims an alibi,—there is evidence here of an alibi, that he was somewhere else, it is the duty of the State to show that he was there, that he is

the man. It is not his duty to prove his innocence under the law. When the State makes a complaint and subsequently files an information, charging anyone with having violated any of the criminal laws, in order to ask the jury to convict the State must prove the guilt of the person, his guilt. He doesn't have to say a word,—'You prove me guilty,'—understand?''

There was no error in this charge upon the part of the trial court. It was as favorable to defendant as he was entitled to. Subsequently, at about 2:30 p. m., the jury came into court. The trial court asked them "Is it because of a question of law that you asked about when you were out the last time," and the foreman answered "No." Whereupon the court charged further upon the question of alibi and told the jury he was going to permit them to eat and then return to the jury room for further deliberation, and added:

"If you don't determine it, somebody else will, but I don't want you to stultify your judgment in any way at all. But, if you can, all right, if you can't,—just rap at the door when you have and inform the officer."

This language might well have been omitted. But it was certainly not more strong than the language used in *People* v. *Coulon,* 151 Mich. 200. The court particularly emphasized that the jury were not to stultify themselves or to find a verdict of guilty if they didn't believe the defendant was guilty. We think there was no reversible error in this part of the trial.

6. It was claimed in the motion for a new trial that at one time when the jury rapped, the officer told the foreman "that the judge was not in and that the sooner they made up their minds, the sooner

they would get out.'' An affidavit to show this was made by Ralph B. Guy who claimed to have been sitting in the jury box when the foreman of the jury informed officer George Parker the jury was unable to agree, whereupon Parker told the foreman ''that the judge was not here, and the sooner you make up your minds the sooner you will get out of here;'' that about three minutes later the jury announced they had agreed on a verdict. This affidavit by Mr. Guy was attached to the motion for a new trial, and in connection therewith appears the affidavit of J. H. Linson, medical officer in charge of the marine hospital. Lillie Vaughner who was on the jury, Hattie E. Walker who was on the jury, Julia Powell who was on the jury, and Mercedes White who was on the jury subsequently made affidavits before Mr. Guy as notary public. The record shows Mr. Schemanske, attorney for defendant, examined officer Parker at the time and he stated what was said.

June 25, 1935, the motion for a new trial was denied. On July 1, 1935, a motion to set aside the order denying defendant a new trial was heard and denied, and defendant subsequently sentenced. The facts stated in Guy's affidavit were disputed by the court officer, and the affidavits of jurors made out of court after rendering a verdict in court may not be heard to impeach such verdict. *People* v. *Stimer,* 82 Mich. 17; *People* v. *Stewart,* 163 Mich. 1; *People* v. *Swift,* 172 Mich. 473; *People* v. *Steeneck,* 247 Mich. 583; *People* v. *Sanford,* 252 Mich. 240.

7. ''No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opin-

ion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.'' 3 Comp. Laws 1929, § 17354.

It does not affirmatively appear the trial in this case resulted in a miscarriage of justice. Conviction is, therefore, affirmed.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSH-NELL, and EDWARD M. SHARPE, JJ., concurred. TOY, J., did not sit.