PEOPLE *v.* TARANSKI.

1. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSES—CONNECTION WITH OFFENSE CHARGED—REJECTION OF TESTIMONY.

Where testimony of a witness to the effect that a new car and the license plates thereon, which had been used by participants in crime of breaking and entering a building in the nighttime with intent to commit a larceny therein, had been stolen at an earlier date, was not tied up with any of the exhibits and, for such reason, was completely stricken from the record, the mere fact that such witness was allowed to testify at all did not constitute prejudicial error (Act No. 328, § 110, Pub. Acts 1931).

2. SAME—REJECTION OF VOLUNTEERED TESTIMONY.

Fact that witness in prosecution for breaking and entering a building in the nighttime with intent to commit a larceny

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am. Jur., Evidence, § 251.
[3] 20 Am. Jur., Evidence, § 1246.
[5] 58 Am. Jur., Witnesses, § 622.
[6] 58 Am. Jur., Witnesses, § 624.

therein was asked how many guns he had in his store of the type of the exhibit, asked "at the time of the robbery?" and then volunteered that the exhibit was his gun, jury was excused, motion for mistrial denied, and upon return the jury was instructed to disregard remark about the robbery and such remark was stricken from the record, did not constitute error (Act No. 328, § 110, Pub. Acts 1931).

3. SAME—ALIBI—EVIDENCE.

Defense of alibi *held,* not established in prosecution for breaking and entering a building in the nighttime with intent to commit a larceny therein, where defendant's wife had, on different occasions, given different accounts as to defendant's presence at home on the night in question and other testimony given was not inconsistent with the commission of the crime (Act No. 328, § 110, Pub. Acts 1931).

4. SAME—EXCLUSION OF TESTIMONY ON COLLATERAL ISSUE—CREDIBILITY OF WITNESS.

Exclusion of testimony on a collateral issue in a criminal case, which if designed to show bias or prejudice of witness, a confessed participant in the crime charged, was merely cumulative, *held,* proper under the circumstances.

5. SAME—COLLATERAL ISSUES—IMPEACHMENT TESTIMONY.

Testimony may not be given on a collateral matter in a criminal case in order to impeach a witness.

6. SAME—COLLATERAL ISSUES—EVIDENCE—DISCRETION OF COURT.

The admission or exclusion of cross-examination on collateral matters rests largely in the discretion of the trial court and there is no error unless the discretion is abused.

7. SAME — COLLATERAL ISSUES — EVIDENCE — IMPEACHMENT TESTIMONY—DISCRETION OF COURT.

Discretion of trial court in denying defendant the right to introduce testimony as to whereabouts of witness who turned state's evidence at time of commission of another entirely different and unconnected offense some 50 days prior to that of offense charged, in order to affect credibility of such witness, was not abused where it would bring into issue a collateral matter and was merely cumulative of other testimony on matter of bias or prejudice of such witness.

8. Same—Breaking and Entering in Nighttime—Other Offenses
   —Use of Stolen Car.

   Where car used in connection with perpetration of crime of
   breaking and entering a building in the nighttime with intent
   to commit a larceny therein was used as a burglar's tool, it
   was not improper to show that such car and the license
   plates used thereon had been stolen, although it was not shown
   that defendants stole them, notwithstanding such evidence
   indicated that other crimes which had nothing to do with the
   crime charged had been committed (3 Comp. Laws 1929,
   § 17320; Act No. 328, § 110, Pub. Acts 1931).

Appeal from Recorder's Court of the City of Detroit; Gordon (Arthur E.), J. Submitted January 14, 1949. (Docket No. 81, Calendar No. 43,934.) Decided April 11, 1949.

Benjamin Taranski was convicted of breaking and entering a building in the nighttime with intent to commit a larceny therein. Affirmed.

*Edward H. Kennedy, Jr.,* for appellant.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *James N. McNally,* Prosecuting Attorney, and *Robert N. Smiley* and *Herbert Burdick,* Assistants Prosecuting Attorney, for the people.

Butzel, J. Bruno Taranski appeals from a judgment of conviction of the crime of breaking and entering a building in the nighttime with intent to commit a larceny therein.* Defendants, Edward Collins and Joseph Zakrzewski, who were tried and convicted at the same time as coconfederates, have not appealed. The prosecution agreed at the trial

---

* See Act No. 328, §110, Pub. Acts 1931 (4 Comp. Laws 1948, § 750.110 [Comp. Laws Supp. 1940, § 17115–110, Stat. Ann. § 28.-305]).—Reporter.

not to refer to the various aliases set forth in the indictment to describe appellant.

It is necessary to give some of the pertinent facts as brought out by the testimony in order to discuss appellant's claims of error made. The conviction is based on the testimony of one Casimir Wiliwis, certain exhibits, and circumstantial evidence. The people made the following showing, mostly by the testimony of Wiliwis. Appellant, Collins and Zakrzewski, together with Wiliwis, planned and executed a burglary at a store of the McLean Motor Sales, Inc., 2340 West Grand Boulevard, Detroit, Michigan. To commit the crime they drove to the premises in a new Packard car, in which there was a sledge hammer, an acetylene torch with which to cut metal, a wrecking bar, rollers to facilitate the moving of a safe, a pistol, a revolver, a rifle, and other small tools. Wiliwis is a self-admitted confederate of the other parties involved. He had known Collins approximately 24 years, Zakrzewski some 20 years, and Taranski 10 or 11 months. The crime was committed during the very early hours of Monday, August 26, 1946, although the parties met late at night on Sunday, August 25, 1946. About 5 days prior thereto defendant Collins met Wiliwis and invited him to join the other defendants to go out on "a job." Wiliwis agreed to go along after discussing the feelings of the others towards him. On August 23, 1946, he and Zakrzewski looked over the premises and the safe therein of the McLean Motor Sales office. On August 25, 1946, the four men met in the vicinity of a garage where a Packard car had been placed. The garage opens on an alley between Taylor and Hazelwood avenues, which extends easterly from Hamilton avenue through Third and Second avenues in Detroit. Wiliwis drove his car to the place of meeting with defendant Collins; Zakrzewski and Taranski arrived in another car.

After parking their cars they went to the garage facing on the alley not far from Third avenue and drove away in the large new Packard car. Collins evidently had the key to the garage; it was a private garage that had been rented from the occupant of the house located in front of the garage.

The front seat had been removed from the Packard car and a bucket seat was substituted for it, thus leaving ample room in the front of the car. The parties rode in the car to the McLean Motor Sales place of business and parked it in a driveway near the doors. Taranski and Collins broke down the doors and entered the building to remove the safe. Wiliwis, armed with a loaded gun, remained outside as a lookout man, while Zakrzewski remained behind the wheel of the Packard with its motor running. Photographs of the car, the 3 guns, and also numerous tools and equipment that were in the car at that time and at the time of the arrest were introduced in evidence. Wiliwis further stated that they drove off after the safe was removed and placed in the car. The safe, however, took up so much room that they could not close the door of the Packard. They therefore removed the rear seat cushion to enable them to shut the door, and threw it in the street not far from the scene of the crime. The cushion was recovered and also introduced as an exhibit at the trial. They drove outside of the city of Detroit in order to reach some place where they could open the safe without being detected. They stopped on a dirt road in Oak Park and removed the safe from the car. Oak Park adjoins Detroit. While they were in the act of opening the safe and after they had already broken off the handle with a sledge hammer, an Oak Park police car drove up without lights. Its headlights were turned on as it approached the Packard. Seeing the police car, someone shouted "Police," and all, except Wili-

wis, immediately left in the Packard car. Wiliwis ran through the woods to the Six-Mile road where he caught a Detroit city bus which he took to the place where he had parked his car. He found Collins there waiting for him. The safe was recovered by the Oak Park police and turned over to the Detroit police.

In a manner undisclosed by the record, the police on learning of a Packard car in a garage in the rear of the house at 812 Hazelwood avenue placed a watch there in order to apprehend anyone who entered the garage. About 3:00 a.m. on August 30, 1946, a coupe drove up near the alley; two men got out and carried a 5-gallon can to the garage. They then returned to the coupe and drove away but soon returned. The police also saw a second car draw up and park near the coupe. The Packard was then driven out of the garage and was gone about 45 minutes. The police had observed the Packard being driven on Taylor avenue, where it stopped and let 2 men out who were identified as Taranski and Wiliwis. Wiliwis was arrested as he entered the coupe which belonged to him. Collins was arrested as he crossed the street and a key fitting in the lock of the garage where the Packard was kept was found in his possession. Zakrzewski got into his own car and picked up Taranski at the corner of Third and Hazelwood and the police followed them. On being unsuccessful in forcing them to the curb because of heavy traffic the police fired a shot at the tires. This brought the car to a stop, and Zakrzewski and Taranski were arrested. The Packard, together with the guns, tools and other articles found therein were identified by the arresting officers and also by Wiliwis and admitted into evidence. An extremely important piece of evidence was an exhibit consisting of a piece of rubber found by the police in Oak Park near where the stolen safe had been lying when

taken out of the Packard. The police evidently suspected that the piece of rubber had been broken off from the rubber mat on the running board of the Packard. They sent the piece of rubber and the rubber mat to the Department of Justice in Washington, D. C., where a special agent of the F. B. I. made an analysis and reported that the piece of rubber had come off the mat. The analyst stated that one would not have to be an expert to be able to match the exhibits.

An unsuccessful effort was made by the defendants to have the names of 4 witnesses stricken from the information. The testimony that these witnesses were to give was to show that the Packard, the license plates used on it, and the guns had been stolen at an earlier date. The testimony of one of these witnesses was completely stricken from the record at the trial as it was not tied up with any of the exhibits. Defendant claims that it was prejudicial that this witness was even allowed to testify. There is not sufficient merit in this claim to necessitate any discussion. See *People* v. *Podsiad*, 295 Mich. 541. Another witness who identified an exhibit, consisting of a Savage automatic rifle, was asked on cross-examination how many guns he had in his store of the type of the exhibit. He in turn asked "at the time of the robbery?" Counsel for defendant asked to have the jury excused and the court so ordered but not before the witness volunteered, "It is my gun; what more do you want?" In the absence of the jury, defendant moved for a mistrial; the court denied this motion but after the jury returned instructed them to disregard the remark about the robbery and it was stricken from the record. This was not error. See *People* v. *Podsiad,* *supra.*

Defendant Collins attempted to establish an alibi through the testimony of his brother. Zakrzewski

offered no defense.  Taranski also claimed an. alibi and offered several witnesses to prove his whereabouts the evening of August 25, 1946.  His wife testified that she returned home with him that evening and he did not leave the home that night, and that he went to work early the next morning.  A police officer testified that appellant's wife, when she was detained for a short period immediately after appellant's arrest, stated that Taranski was not home that night.  The timekeeper of the motor car company testified that appellant had punched his time card the following morning but also admitted that at times a man will punch the time card of another man who did not come to work at all.  There was no showing that appellant could not have gone to work after he came home early in the morning.

Wiliwis was shown to be a criminal with a long record.  He had spent most of his adult life in prison and if he had been charged with a felony and had been convicted he unquestionably would be a third offender, and there was good reason for him to turn State's evidence.  There is also, ample testimony to show that Wiliwis belonged to one faction that ran a gambling game in the city of Hamtramck, while Taranski belonged to another faction engaged in similar activities.  There had been a great deal of difficulty and enmity between the two factions and very serious threats had been made.  Some 60 days prior to the commission of the crime Wiliwis claimed that he was staying at his mother-in-law's home in Ann Arbor but he did not know the house number.

It was further shown that about 50 days prior to August 25, 1947, the Wiliwis' faction had been involved in a shooting affray with the police in Birmingham, Alabama.  Wiliwis denied that he had been there or that he had ever been in Alabama or had registered at a hotel there.  Defendant attempted to show by a witness and a photostatic copy of Wili-

wis' alleged signature on a hotel register at a Birmingham hotel that Wiliwis had been there. Inasmuch as Wiliwis had positively testified on cross-examination that he had never been there or registered at a hotel, the judge ruled that testimony to the contrary would only bring into issue a collateral matter, and such testimony could only be for impeachment, and, therefore, was inadmissible. Appellant contends that this was error as the purpose of the testimony was to show the bias and interest of Wiliwis, that this was not collateral and only indirectly was impeachment although it goes directly to the credibility of the witness. Nevertheless, appellant's attorney in trying to introduce testimony to show that Wiliwis was not telling the truth stated:

"The only purpose of this is to attack his credibility and Your Honor would probably instruct the jury that they can take that on consideration," et cetera.

That bias and prejudice had previously existed between Wiliwis and Taranski is fully shown by the record. Wiliwis testified that when he was invited to join in the commission of the crime he specifically asked about Taranski's feelings toward him and was assured that the enmity no longer existed. If the testimony was on a collateral issue, there was no prejudicial error in refusing to admit it as it might have diverted the attention of the jury as to whether Wiliwis was in Birmingham or not, instead of on the real question at issue whether defendants committed the crime some 60 days later or not. If the purpose of the testimony was to show the bias or prejudice of Wiliwis, it would be cumulative. Under the circumstances it was not prejudicial error to exclude it. Wiliwis' life of crime was sufficient to alert the jury as to his credibility.

The difficulty in the case, however, arises because

there was absolutely no denial of Wiliwis' testimony. There is no claim made that the verdict of the jury was against the great weight of the testimony or that it was not shown that defendants were guilty beyond a reasonable doubt. There was no conflicting testimony to weigh against that of Wiliwis, as none of the defendants took the witness stand nor did they produce any character witnesses. We need not discuss the multitude of cases that hold that in a criminal case testimony may not be given on a collateral matter in order to impeach a witness. Even if, as appellant contends, the circumstances in the instant case take it out of the general rule, it was not prejudicial error to exclude the testimony. It is true that Wiliwis' testimony was not corroborated by other witnesses. It, however, is reinforced by circumstantial evidence of a convincing nature, including the exhibits. The Packard car and its contents were most important elements in the commission of the crime, and appellant's presence with the others at the time of his arrest, immediately upon leaving the Packard car, in the absence of any explanation on his part, ties him up inescapably with the crime. The admission or exclusion of cross-examination on collateral matters rests largely in the discretion of the trial court. Unless it is abused, there is no error. *People* v. *MacCullough,* 281 Mich. 15. There was no such abuse in the instant case.

Appellant contends that there was reversible error in permitting testimony to show that the Packard car was a stolen car and also that the license plate had been detached or stolen from another car and fastened to the Packard car. There was no testimony offered or introduced indicating in any manner that any of the defendants had either stolen the car or the license plate. It was shown, however, that the Packard had been transported from

the Packard factory to the yards of a company which ships cars on trucks to various points; that the gate to the yards had been broken, the padlock torn off and the car had disappeared; that the theft was reported to the police. In the same manner the disappearance of the license plate was shown and the loss reported to the police. The car with the license plate attached was used as a burglar's tool in order to remove the safe. The question of who was the owner of the car and such tool became very material and it was not improper to show to whom they belonged and how they disappeared. Appellant, however, claims that the testimony indicated another crime which had nothing to do either in time or place with the crime with which he is charged. Many cases involving different facts and circumstances are cited on this question. Many of them were decided before the enactment of the code of criminal procedure, 3 Comp. Laws 1929, § 17116, *et seq.,* as amended * (Stat. Ann. § 26.841 *et seq.*). Chapter 8, § 27 of the code,† 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050) provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

---

* 4 Comp. Laws 1948, § 760.1 *et seq.*—Reporter.
† 4 Comp. Laws 1948, § 768.27.—Reporter.

Under the facts in this case there was no prejudicial error in admitting the testimony.    Our discussion of these main questions answers in the main all other questions raised.    It would be repetitious to discuss them again.    Any others raised we do not regard of sufficient merit so as to require discussion.

· The judgment of conviction is affirmed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.