PEOPLE *v.* MacCULLOUGH.

1. CRIMINAL LAW—ALIBI—CIRCUMSTANTIAL EVIDENCE.

In prosecution for grand larceny, where identification of defendant was not positive but went only to similarity of appearance, testimony that defendant did not keep an appointment at another city on day in question; that his church bus was near farm from which foxes were stolen in nighttime, its identification; his denial to police of knowledge of the foxes although they were then in his garage; his attempt to make a hurried disposal on day after theft; his unfulfilled promise to appear at police department; his hurried trip out of State; attempted avoidance of arrest although he knew he was wanted; his prior operation of a fox farm and familiarity with foxes; close asso-

ciation with person who pleaded guilty and had been previously convicted of robbery and defendant's admission in writing that he hid evidence of such other person's guilt from the police *held*, to justify jury's disregard of defense of alibi interposed after people's case had been closed.

2. SAME — TRIAL — PROSECUTING ATTORNEY — WITNESSES—MISCONDUCT—RECORD.

Contention that conduct of prosecutor and witnesses in course of trial of one charged with grand larceny was prejudicial *held*, not sustained by record where it appears from trial court's opinion on denial of motion for new trial that spectators were not permitted to laugh, sneer, or scoff or otherwise show their prejudice or bias, prosecutor used same tone of voice he had used in trial of other cases and opinion denies misconduct on part of witnesses.

3. SAME—EVIDENCE—TRIAL—CROSS-EXAMINATION OF WITNESSES.

The trial court has considerable latitude on cross-examination in permitting questions that are calculated to elicit any information as to the past life and conduct of a witness and to enable the jury to see what manner of man he is and it was not error to permit prosecuting attorney in trial of one charged with grand larceny to have asked certain of such questions although Supreme Court is of opinion it would have been wiser to have excluded them.

4. WITNESSES—COLLATERAL MATTERS—CROSS-EXAMINATION—DISCRETION OF COURT.

The discretion of the trial judge controls the nature and extent of the introduction of collateral matters upon cross-examination and will never be reviewed except in cases of abuse and this will not be lightly inferred.

5. SAME—ABUSE OF DISCRETION.

The discretion of the trial court upon the subject of cross-examination on collateral matters is not subject to review unless it is shown to have been grossly and oppressively abused.

6. SAME—MATTER OF RIGHT—DISCRETION OF COURT.

So far as cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the court, and, unless abused, its exercise is not the subject of review.

7. SAME—CREDIBILITY—RELEVANCY.

A witness may not be cross-examined as to any facts which, if admitted, would not only be collateral but wholly irrelevant to the matter in issue and which would in no way tend to affect his credit, nor can a witness be cross-examined as to an irrelevant matter in order to contradict him.

8. SAME—LATITUDE OF CROSS-EXAMINATION.

The latitude of cross-examination should not ordinarily go so far as to permit the introduction of evidence that has no legitimate relation to any of the issues on trial, which can in no way affect the credibility of the witness subject to cross-examination, and which is of such a character as to be likely to be misapplied by the jury.

9. SAME—CREDIBILITY—DISCRETION OF COURT.

The extent to which cross-examination of a witness as to credit may be carried is left largely to the discretion of the trial judge and if matters which are clearly immaterial or which tend to show the reasons of the witness for his opinions or his fairness of mind are admitted on cross-examination, generally, there is no error.

10. SAME—COLLATERAL MATTERS—RELEVANCY.

Cross-examiner who cross-examines one witness on matters purely collateral may not inquire of other witnesses whether the answers given are truthful because such inquiry would open irrelevant matters.

11. SAME—INTEREST OR BIAS—CREDIBILITY—RELEVANCY.

Interest or bias of a witness goes directly to his credit and is not regarded as irrelevant.

12. SAME—INTEREST—REFUTATION.

A party cannot be compelled to put up with the statements of a witness concerning his own interest or personal relation to the case or parties where it becomes necessary to know his position.

13. SAME—CROSS-EXAMINATION—INCONSISTENT STATEMENTS OR CONDUCT.

A witness may, on cross-examination, be shown to have given testimony inconsistent with previous statements or conduct.

14. SAME—SUSPICIOUS TESTIMONY—RIGID CROSS-EXAMINATION.

If there is anything suspicious in the character of the testimony of a witness, he may be subject to rigid cross-examination.

15. CRIMINAL LAW—MOTIVES—EVIDENCE.

Testimony is admissible which has any bearing upon the motives of one charged with crime.

16. WITNESSES—QUESTION AS TO PREVIOUS CHARGE OF CRIME—IMPEACHMENT.

A witness may be asked if he has previously been charged with crime and his answers are admissible although, if the witness denies such accusation has been made, he may not be impeached because such matters are collateral.

17. SAME—CROSS-EXAMINATION FOR CREDIBILITY.

Upon cross-examination of a witness the trial judge must permit such reasonable interrogation as will fairly disclose to the jury the true character of the witness and thus enable them to judge of the weight which should be given to his testimony.

18. CRIMINAL LAW—POSSESSION OF STOLEN GOODS AS EVIDENCE OF LARCENY.

In prosecution of one charged with having stolen 12 silver black foxes, charge that defendant's recent possession of the foxes was evidence of guilt *held*, proper under circumstances.

19. SAME—LARCENY—CONSPIRACY—EVIDENCE—PLEADING.

In prosecution of one charged with having stolen 12 silver black foxes, tried on theory defendant and another did so in pursuance of a joint enterprise, it was competent to show conspiracy without any charge of it in the information.

20. SAME—ATTEMPTED SUPPRESSION OF EVIDENCE—INFERENCES.

Any attempt by one charged with crime to destroy or withhold evidence may justify an inference that such evidence, if produced, would have been unfavorable to defendant.

21. SAME—FLIGHT—EVIDENCE.

While evidence of flight from the scene of an offense is not substantive evidence of guilt, since it may be quite as consistent with innocence as with guilt, it may bear upon the purpose and intent of the party.

22. SAME—LARCENY OF FOXES—EVIDENCE.

In prosecution for stealing 12 silver black foxes, evidence of defendant's knowledge of foxes, that he had operated a fox farm and handled them; was present in vicinity of crime when offense was committed and not in another county as claimed and that purported alibi was false; what sort of a man de-

fendant's alleged accomplice was; that he had before that time used church bus, identified as being near scene of crime, in connection with the fox business; correspondence and negotiations with sheriff looking toward settlement of the charge; circumstances of alleged admissions made to police officers in another county; that defendant denied foxes were in his garage when he knew they were there; circumstances of his attempted quick disposal of them on day after they were stolen notwithstanding his denial of such attempted disposal; that defendant, a minister, kept in touch with members of his congregation and did not surrender himself until after accomplice had pleaded guilty, ▪been released and gone back to Pacific coast *held,* proper.

23. Same—Credibility of Witnesses—Question for Jury.

In prosecution for crime where testimony is disputed the credibility of the witnesses and the truthfulness of their statements is for the jury.     .

24. Same—Grand Larceny—Charge of Court—Alibi—Requests to Charge.

Charge of court in prosecution for grand larceny *held,* to cover the case fully and fairly, especially where court particularly emphasized that it was necessary that jury find defendant did accompany one who pleaded guilty to the crime, charged that claimed alibi was an absolute defense, if true, and court gave either the words or substance of many of defendant's requests to charge on general and specific matters.

25. Same—Grand Larceny—Record.

In prosecution for grand larceny, record *held,* not to sustain contentions that error was committed in cross-examination of witnesses for defense, that defense witnesses were required to reach a conclusion on their own testimony, that reception in evidence of admissions of alleged accomplice constituted reversible error or that defendant was wrongfully convicted upon consideration of record as a whole, where court fully protected defendant's rights during the trial and in his charge to the jury.

Appeal from Sanilac; Boomhower (Xenophon A.), J. Submitted April 15, 1937. (Docket No. 149, Calendar No. 38,091.)   Decided September 1, 1937.

Dawson MacCullough was convicted of stealing 12 silver black foxes.   Affirmed.

*Philip A. McHugh,* for defendant.

*Raymond W. Starr,* Attorney General, and *Leonard J. Paterson,* Prosecuting Attorney (*Robert W. McKenzie,* of counsel), for the people.

POTTER, J.   Defendant, convicted in the circuit court for Sanilac county of stealing 12 silver black foxes, appeals from such conviction.   **Defendant** claims several dozen errors in addition to the 100 assignments of error which occupy about 40 pages of the record.   These 100 assignments of error are classified by group headings, as follows:

1.   "Prejudicial conduct of the prosecutor in ridiculing, in open court, and in the presence and hearing of the jury, the defendant's religion,—his ministers,—his church and its members;

2.   "Errors predicated upon improper cross-ex amination of a number of defense witnesses who had testified to the 'bad reputation' of Callahan and other witnesses for the People, as to truth and veracity,—and to the good reputation in that respect, and, in addition, for being a peaceful and law-abiding citizen, as to the defendant,—Dawson MacCullough;"

3.   Requiring various witnesses for the defense to themselves reach a conclusion and an adjudication upon their own testimony;

4.   "Errors based upon improper admission in evidence of the declarations, admissions and confessions of Wuerch."

5.   Defendant, as to the 100 assignments of error, also contends that, considered as a whole, they caused his wrongful conviction.

Defendant was the owner of a Ford church bus bearing license No. 84-114 of 1932. He transferred this to one Wuerch. The license was purchased for a Ford sedan and used on a church bus. Wuerch came to Sandusky, August 10, 1932, accompanied by another man. They were seen by an oil station attendant, and were supplied with gasoline and oil. Wuerch and his companion drove to the Smalldon fox farm that night and the Ford bus was seen parked in the driveway north of the farm, in Watertown township, Sanilac county, by James McVittie, undersheriff, who examined it, took the license number and reported to the sheriff of Sanilac county.

Wuerch and his companion cut through the fence and stole several silver black foxes valued at $1,000 and upwards, loaded them into the church bus and took them to 321 Leroy street, Ferndale, Michigan, where they were housed in a garage at the rear of the home of defendant and concealed until they were recovered by the Detroit and Ferndale police, August 12, 1932.

The morning after the foxes were stolen, Frank Smalldon, the owner, notified the sheriff of Sanilac county of the loss of his foxes. The sheriff began investigation. He found the license of the church bus in the name of defendant and called the police department of Detroit and asked it to make investigation. Defendant was interviewed. There is testimony he denied knowing anything about any foxes; again interviewed, he denied knowing anything about any foxes. About this time a telephone call came to the Detroit police from the Ferndale police to the effect they had captured a stray fox which had been running at large upon the streets of Ferndale.

After being advised of his constitutional rights, defendant recalled knowing there were some foxes in his garage which his nephew had brought there. The police officers accompanied defendant to Ferndale where the foxes were caught, crated and turned over to the dog pound in Detroit to await identification. There was testimony that defendant went to the basement of his church where Mary Heddon and her husband were living, on the afternoon of August 11th, the day following the stealing of the foxes; that he came in, hurried and excited and very nervous, and proposed to give her a number of foxes in payment of notes given by him to her; that he urged her to act promptly, as a day's delay in taking the foxes might be too late.

After catching the foxes in Ferndale, defendant promised he would appear at the police department the next morning. He didn't appear. Though scheduled to preach at his various appointments on Sunday, he went to Chicago. Learning of defendant's departure, his church congregation took up a sum of money and sent one Callahan to Chicago to persuade defendant to come back and face his accusers. He did not do so.

Wuerch was arrested August 12, 1932, turned over to the sheriff of Sanilac county, and August 16, 1932, was brought before a justice of the peace and pleaded guilty and was remanded to the county jail.

Defendant MacCullough knew on August 12th he was wanted by the sheriff of Sanilac county. On August 16th, he knew there was a warrant for his arrest at Sandusky. He kept in touch with members of his congregation. He knew why he was wanted by the sheriff of Sanilac county. He remained in hiding in Detroit for about 10 days. He was arrested in Herrin, Illinois, December 18, 1932.

Defendant had made arrangements to spend a vacation with his family and friends on the shore of Lake Huron. He had made a deposit on a cottage. After his hurried trip to Chicago, he abandoned this vacation and began a journey through the western and southern States. August 10, 1932, he had an appointment to meet one of the members of his congregation at his church in Detroit. This member of the church was present and, after waiting all afternoon, the defendant did not appear. It was on the night of August 10th the foxes were stolen.

Defendant wrote several letters and telegrams during November and December in an attempt to fix things with the sheriff of Sanilac county. He did not give notice of an alibi as required by statute; * but the trial court permitted him, after the people's case had been closed, to interpose the defense of alibi.

The people claim defendant accompanied Wuerch to Sanilac county and assisted him in stealing the foxes. And they claim that, whether he did or not, he aided in the concealment of the foxes, knowing them to have been stolen.

The identification of defendant as being at Sandusky was not positive but went only to similarity of appearance. But the testimony that defendant did not keep his appointment in Detroit on August 10th; that the church bus was near the Smalldon fur farm in the nighttime, its identification; defendant's denial to the police of knowledge of the foxes; the fact the foxes were then in his garage; that he sought to dispose of foxes on the 11th, and was in a hurry to do so; his promise to appear at the police department; his hurried trip to Chicago; his attempt to avoid arrest when he knew he was wanted in Sandusky; his abandonment of his proposed vaca-

* See 3 Comp. Laws 1929, § 17313.—Reporter.

tion; his prior operation of a fox farm; his familiarity with foxes; his close association with Wuerch, who had been previously convicted of robbery; his admission in writing that he hid evidence of Wuerch's guilt from the police; and many other things, may have weakened the effect of the testimony relating to defendant's alibi.

Defendant, after conviction, made a motion for a new trial. The trial court denied it. From the trial court's opinion, it appears that the spectators were not permitted to laugh, sneer or scoff or otherwise show their prejudice and bias against defendant, and we find nothing in the settled bill of exceptions so to indicate. The trial court, in denying the motion for a new trial, indicates the prosecutor used the same tone of voice he had used in the trial of other cases, and denies there was any misconduct on the part of the witnesses.

Defendant complains of the cross-examination of his witnesses by the prosecuting attorney. It must not be overlooked that in dealing with criminal cases the people are sometimes scrutinizing abnormal human conduct and ordinarily, on cross-examination, the trial court must be allowed considerable latitude of discretion in permitting questions calculated to elicit any information as to the past life and conduct of the witness and to enable the jury to see what manner of man he is, and it is held not erroneous in this case to have permitted certain questions of this character, although in the opinion of this court it would have been a wiser exercise of discretion to have excluded them. *Beebe* v. *Knapp,* 28 Mich. 53; *Jacobs* v. *Queen Insurance Company of America,* 195 Mich. 18. The discretion of the trial judge controls the nature and extent of the introduction of collateral matters upon cross-examination

and will never be reviewed except in cases of abuse and this will not be lightly inferred. 1 Greenleaf on Evidence (8th Ed.), §§ 446-448; *People* v. *McArron,* 121 Mich. 1. The discretion of the trial court upon the subject of cross-examination on collateral matters is not subject to review unless it is shown to have been grossly and oppressively abused. So far as the cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge and, unless abused, its exercise is not the subject of review. *Langley* v. *Wadsworth,* 99 N. Y. 61 (1 N. E. 106); *People* v. *McArron, supra.* A witness may not be cross-examined as to any facts which, if admitted, would not only be collateral but wholly irrelevant to the matter in issue and which would in no way tend to affect his credit, nor can a witness be cross-examined as to an irrelevant matter in order to contradict him. *Langley* v. *Wadsworth, supra; Commonwealth* v. *Schaffner,* 146 Mass. 512 (16 N. E. 280); *People* v. *McArron, supra.* The latitude of cross-examination should not ordinarily go so far as to permit the introduction of evidence that has no legitimate relation to any of the issues on trial, which can in no way affect the credibility of the witness subject to cross-examination, and which is of such a character as to be likely to be misapplied by the jury. *Sullivan* v. *O'Leary,* 146 Mass. 322 (15 N. E. 775); *People* v. *McArron, supra.* The extent to which cross-examination of a witness as to credit may be carried is left largely to the discretion of the trial judge and if matters which are clearly immaterial or which tend to show the reasons of the witness for his opinions or his fairness of mind are admitted on

cross-examination, there is, as a general rule, no error. *Phillips* v. *Inhabitants of Marblehead,* 148 Mass. 326 (19 N. E. 547); *People* v. *McArron, supra.* Where a witness is cross-examined on matters purely collateral, the cross-examiner may not inquire of other witnesses whether the answers given are truthful, because such inquiry would open irrelevant matters. *Geary* v. *People,* 22 Mich. 220. The interest or bias of a witness has never been regarded as irrelevant. It goes directly to his credit, and must determine, with the jury, how far facts depending on his evidence are to be regarded as proven. A party cannot be compelled to put up with the statements of a witness concerning his own interest or personal relation to the case or parties, where it becomes necessary to know his position. *Geary* v. *People, supra.* The administration of justice would be very defective if every witness could, without contradiction, make himself out impartial and disinterested and run no risk of exposure. Under such a system, the most dishonest witnesses would be likely to describe themselves as the most fair and reliable. *Geary* v. *People, supra.*

A witness may, on cross-examination, be shown to have made statements inconsistent with his testimony. *Gibbs* v. *Linabury,* 22 Mich. 479 (7 Am. Rep. 675); *Graham* v. *Myers,* 67 Mich. 277; *Lepard* v. *Railroad Co.,* 166 Mich. 373 (40 L. R. A. [N. S.] 1105). And, if there is anything suspicious in the character of the testimony of a witness, he may be subject to rigid cross-examination. *People* v. *Palmer,* 105 Mich. 568. So the conduct of a witness inconsistent with his testimony may be shown. *People* v. *Farrell,* 137 Mich. 127.

Testimony is admissible which has any bearing upon the motives of the defendant. *Hamilton* v.

*People,* 29 Mich. 173.   One may be asked if he has been charged with crime and his answers are admissible although, if the witness denies such accusation has been made, he may not be impeached because such matters are collateral.   *Hamilton* v. *People, supra.*   It is the duty of the trial judge, upon the cross-examination of a witness, to permit such reasonable interrogation as will fairly disclose to the jury the true character of the witness, and thus enable them to judge of the weight which should be given to his testimony.   *People* v. *Harrison,* 93 Mich. 594; *People* v. *Sharp,* 163 Mich. 79.

Complaint is made of the court's charge about the recent possession of the foxes, as being evidence of the defendant's guilt.   The jury had a right to consider the possession of the foxes, under the circumstances, as some evidence of defendant's guilt.   *People* v. *Wood,* 99 Mich. 620; *People* v. *Hogan,* 123 Mich. 233; *People* v. *Carroll,* 54 Mich. 334; *People* v. *Walters,* 76 Mich. 195; *People* v. *Trine,* 164 Mich. 1; 16 C. J. p. 542.

The people claimed defendant accompanied Robert Wuerch on the trip when the foxes were stolen.   The trial court charged the jury:

"If the respondent accompanied Robert Wuerch up to the county of Sanilac and assisted in taking the foxes described here, which have been shown to be worth more than $50, then it would be your duty to find him guilty."

It was the theory of defendant, outlined in his requests to charge, that Wuerch stole the foxes, with the aid and assistance of some person or persons unknown to defendant.   The trial court charged that while admissions or declarations or confessions of an accused party were competent as against the

party himself if freely and voluntarily made, such admissions, declarations or confessions as to another, even though such person were an accomplice, were purely hearsay unless such admissions, declarations or confessions were made in the presence of the accused, under such circumstances that his acquiescence in such statements, admissions, declarations or confessions could be plainly inferred from his demeanor and conduct. In connection with this charge, the trial court said to the jury:

"I will say in that connection, if anything has crept into the case to the effect that Robert Wuerch has made certain statements involving the respondent in this case, they would be admissible as to Robert Wuerch himself, but not as against this respondent, unless as I have said, made under such conditions as in the presence of the respondent."

The case was tried by the people upon the theory that Wuerch and defendant were engaged together in furtherance of a common design,—that they entered into a conspiracy to steal the foxes in pursuance of a joint enterprise. That, in point of fact, there was a conspiracy was competent to be proved without any charge of it in the information. *Hamilton* v. *Smith,* 39 Mich. 222; *People* v. *McGarry,* 136 Mich. 316; *People* v. *Lewis,* 264 Mich. 83. Had Wuerch been offered as a witness, his testimony would have been admissible even though no conspiracy was charged in the information. *People* v. *Mol,* 137 Mich. 692 (68 L. R. A. 871, 4 Ann. Cas. 960).

There was testimony that certain evidence tending to show the guilt of Wuerch was concealed by defendant from the police. Any attempt to destroy or withhold evidence may justify an inference that such evidence, if produced, would have been unfavorable

to defendant. Some courts go so far as to state that the presumption always is, that the concealment or suppression of evidence within the possession or control of a party is against his interest. 16 C. J. p. 541.

It was the theory of the people not only that defendant and Wuerch were engaged in a common enterprise in stealing the foxes in question, but that defendant went to Chicago, then claimed he was sick and had suffered a stroke, when, as a matter of fact, he was making his way rapidly toward the Pacific coast which he ultimately reached, and thereafter that he visited various places in the south and west, and it is contended the defendant's flight and concealment was some evidence of his guilt. Flight from the scene of an offense may be quite as consistent with innocence as with guilt. Evidence of flight is not substantive evidence of guilt, though it may bear upon the purpose and intent of the party. *People* v. *Cismadija,* 167 Mich. 210.

It was proper for the prosecuting officer to show defendant's knowledge of foxes; that he had been engaged in the operation of a fox farm; his ability to handle foxes; that he was present in the vicinity when the offense charged was committed, and not in Detroit as he claimed; that his purported alibi was false. To do that, it was proper to show he did not keep appointments he had made in Detroit at the time. It, too, was proper to show what sort of man Wuerch was; that he had before that time used the church bus in connection with the fox business. We find no error in the introduction of the correspondence or of the negotiations had with the sheriff looking toward a settlement of the charge. It was the duty of the prosecuting attorney to place before the jury all of the facts in relation to the alleged admis-

sions made by defendant to the police officers in
Detroit, and the jury had a right, if they found such
statements were made, to consider them; to show
defendant denied the foxes were in the garage when
he knew the foxes were in the garage; and it was
proper to show defendant sought to dispose of the
foxes the next day, although he denies having done
so, and to show his manner and demeanor at the time
and the purposes for which he sought to dispose of
them. Though this testimony may have been dis-
puted, the credibility of the witnesses and the truth-
fulness of their statements was for the jury. It was
competent for the people to show the defendant con-
stantly kept in touch with the members of his con-
gregation in Detroit; that he did not come back and
surrender himself until after Wuerch pleaded guilty,
had been released, and gone back to the Pacific coast.

Defendant very strenuously objects to the charge
of the trial court. We have examined that charge
with considerable particularity and think it fully
and fairly covered the case. The court particularly
emphasized that the main point to be kept in mind
was, Did defendant accompany Robert Wuerch in
that bus on the night of August 10th to Sanilac
county, and did they steal the foxes in question,—
that that was the real question which the jury were
to consider. He gave defendant's requests in rela-
tion to an alibi, and charged them it constituted an
absolute defense, if it was true. At the conclusion
of the testimony, counsel for defendant suggested
that certain specific requests be given, one in regard
to the dismissal of the second count in the informa-
tion, which was given by the court; also a request in
relation to stolen property. He asked that a request
be given, which was a cautionary one, directing the
jury to exclude from consideration any extraneous

or outside matters, such as rumors or suspicions directed against the defendant, and not to consider any evidence of public prejudice, but to decide the case solely on the evidence adduced in open court. The trial court cautioned them in relation to considering anything which they might have seen in the newspapers in relation to the case, and directed them not to consider the fact that some State police officers had been in attendance as in any way bearing upon their verdict. Then, at the request of counsel for defendant, he gave defendant's request, that circumstances of suspicion, no matter how grave or strong, could not be considered as evidence and they ought not to convict defendant unless they were satisfied beyond a reasonable doubt of his guilt, and that defendant did not have to prove himself innocent. And he also gave a special request in relation to the testimony of Mary Heddon, who had testified to defendant having come to her place to sell and dispose of the foxes in payment of his promissory notes on the day after the foxes were alleged to have been stolen, which testimony it was claimed had been repudiated; and directed the jury that the entire question of the truthfulness of the witnesses, and the weight of their testimony, was for them.

Defendant, in his original brief, cited *People* v. *Davis,* 52 Mich. 569; *People* v. *Dane,* 59 Mich. 550; *People* v. *Carr,* 64 Mich. 702; *People* v. *Montague,* 71 Mich. 447, in support of his claim that the prosecuting attorney violated the ethics of the profession and the rules of law in the trial of the case. The trial court, in passing upon defendant's motion for a new trial, negatived the claim made by defendant; and an examination of the record does not sustain it.

We find no error in the cross-examination of the witnesses for the defense, nor do we find the third

group of assignments of error well taken. An examination of the record satisfies us the trial court fully protected the rights of defendant so far as any testimony in relation to the admissions of the defendant Wuerch was concerned, not only in the trial of the case, but in his charge to the jury. Upon the blanket assignment of error that, considered as a whole, defendant was wrongfully convicted, an examination of the record shows that a disputed question of fact was left to the jury, under a fair charge, for their determination, and the jury found defendant guilty. We find no reversible error in the conduct of the trial or the determination of the jury.

Conviction affirmed.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.