PEOPLE v McCLOW

1. CRIMINAL LAW—IDENTIFICATION—ADMISSIBILITY.

An in-court identification of the defendant, even though subsequent to an illegal pretrial identification procedure is admissible if, but only if, the prosecutor is first able to establish by clear and convincing evidence that it is based upon observations of the defendant other than those at the illegal pretrial identification.

2. CRIMINAL LAW—IDENTIFICATION—INDEPENDENT SOURCE—QUESTION OF LAW.

Whether an in-court identification of a defendant is based on a source independent of an illegal pretrial identification is a question for the court, to be decided outside the presence of the jury.

3. CRIMINAL LAW—IDENTIFICATION—ADMISSIBILITY.

The test to be applied in determining whether an in-court identification of the defendant is admissible, even though subsequent to an illegal pretrial identification, is whether the in-court identification has been come at by exploitation of the illegal procedure or by means sufficiently distinguishable to be purged of the primary taint.

4. CRIMINAL LAW—IDENTIFICATION—INDEPENDENT SOURCE.

The factors to be considered in determining whether an in-court identification of the defendant is from a source independent of a prior illegal pretrial identification, so that the in-court identification is purged of the taint of the illegality, are: the witness's prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pretrial description

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 29 Am Jur 2d, Evidence §§ 367 *et seq.,* 1143.

[6] 58 Am Jur, Witnesses § 621.

[7] 58 Am Jur, Witnesses § 675 *et seq.*

[8] 58 Am Jur, Witnesses § 790.

[9, 10] 58 Am Jur, Witnesses § 680.

[11] 58 Am Jur, Witnesses § 816.

[12] 58 Am Jur, Witnesses § 657.

and the defendant's actual appearance, any identification of another person before confrontation with the defendant, photographic identification before confrontation, failure to identify the defendant on a prior occasion, the lapse of time between the alleged act and pretrial identification, and any uncertainty in the witness's response to whether the witness could have identified the defendant at trial had he not seen him at the illegal pretrial identification.

5. CRIMINAL LAW—IDENTIFICATION—ADMISSIBILITY.

An in-court identification of the defendant by a rape victim was admissible, despite an illegal pretrial confrontation, where the trial judge found that the complainant was intelligent and observant, unhesitatingly and convincingly identified the defendant, asserted that the identification was independent of the illegal confrontation, the complainant had never failed to identify the defendant as the attacker and had never identified anyone else as her assailant, the description the complainant gave after the attack was close to defendant's actual appearance, and the complainant had ample time to observe the defendant during the rape.

6. CRIMINAL LAW—WITNESSES—CROSS-EXAMINATION.

The extent and control of cross-examination in a prosecution for a crime is largely within the sound discretion of the trial judge, and unless such discretion is abused, an appellate court will not interfere.

7. WITNESSES—CROSS-EXAMINATION—CREDIBILITY—UNNATURAL CONDUCT.

The credibility of a witness may be attacked on cross-examination by questioning him as to conduct on his part which is inconsistent with what would be natural or probable if his statements on direct examination were true.

8. CRIMINAL LAW—WITNESSES—ALIBI WITNESS—CREDIBILITY.

It is within the province of the jury to determine the credibility of all witnesses including any whose testimony tends to establish an alibi.

9. CRIMINAL LAW—WITNESSES—ALIBI WITNESS—CREDIBILITY—UNNATURAL CONDUCT.

The credibility of an alibi witness may be attacked showing that he failed to come forward with the alibi at any time prior to trial, because his failure to come forward at an earlier date is inconsistent with the truth of his testimony.

10. CRIMINAL LAW—WITNESSES—ALIBI WITNESS—CREDIBILITY—PRE-
SERVING QUESTION.

Prosecutor's commenting on the failure of an alibi witness to
come forward before trial as showing a lack of credibility did
not result in reversible error where the defendant did not raise
an objection at trial, so as to present the court with an
opportunity to correct any harm attributable to the prosecu-
tor's comment, and the court correctly instructed the jury that
when an alibi defense is presented the prosecution has the
burden of proving beyond a reasonable doubt that the defend-
ant was present at the time and place of the commission of the
alleged offense.

11. CRIMINAL LAW—WITNESSES—CHARACTER WITNESS—CROSS-EXAMI-
NATION.

A witness testifying to the good reputation or character of a
criminal defendant may, as a general rule, be interrogated on
cross-examination with respect to rumors or reports of particu-
lar acts imputed to the defendant and as to what the witness
has heard of specific charges of misconduct made against the
defendant for the purpose of testing the credibility of the
witness by ascertaining his good faith, information, and accu-
racy.

12. CRIMINAL LAW—WITNESSES—CHARACTER WITNESS—CROSS-EXAMI-
NATION.

Prosecutor's asking a defense character witness if she had heard
if the defendant, charged with rape, had ever approached
women was improper where the testimony of the witness on
direct examination was carefully restricted to the fact that the
defendant had a good reputation in the community for truth
and veracity.

Appeal from Kent, George V. Boucher, J. Sub-
mitted Division 3 January 4, 1972, at Grand Rap-
ids. (Docket No. 11020.) Decided April 26, 1972.

David McClow was convicted of rape. Defendant
appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,* .

Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Larry R. Farmer,* Assistant Defender, for defendant on appeal.

Before: FITZGERALD, P. J., and R. B. BURNS and TARGONSKI,* JJ.

TARGONSKI, J. On October 27, 1970, defendant, David McClow, was convicted, by a jury, of forcible rape. MCLA 750.520; MSA 28.788. Defendant was sentenced to a term of 12 to 30 years in prison.

On the evening of March 24, 1970, in the city of Grandville, Michigan, complainant was returning home from work. She drove the car into the driveway, spoke with her father at the back door, and then at his request, drove the car into the garage. While she was arranging her effects in the car, she was grabbed from behind and a hand was placed over her mouth. She was then threatened by a male voice and, being in fear of this person, followed his directions to back the car out of the driveway. She did this and once on the street proceeded pursuant to directions given, to drive to a farm driveway.

During the process some sort of object was held at her neck. Once the farm driveway was reached, she was asked by her abductor for a scarf and told to use it as a blindfold. She did this and was then pulled into the back seat and forcibly raped.

After this, and at her assailant's direction, she drove away from the scene. Several times while driving she was able to observe her attacker's forehead and hairline in the rear view mirror.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

After she had driven to within a few blocks of her home, she was ordered to stop at an intersection. At this point, the assailant exited through a rear door of the car. Because the car had been stopped right under a street light, she was able to see the right profile of the man's face for a period of 10 to 15 seconds as he walked away. She was also able to observe physical dimensions, clothing, hair style, and that the assailant had a high-pitched voice.

After defendant's arrest as a suspect, complainant viewed the defendant through a one-way mirror and identified him as the rapist by physical characteristics and voice. Later, defendant was identified as the assailant in a police lineup. Counsel was not present at the one-way mirror view, but did participate in the lineup. Defendant was then charged with rape.

An evidentiary hearing was held on defendant's motion to suppress evidence. The court held that the pretrial identifications were inadmissible as evidence because the mirror view was without counsel and the lineup was a product of that mirror observation. However, the court then ruled that the anticipated in-court identification would be admissible as being independent of and untainted by the prior illegal confrontations. Subsequently, at the trial complainant identified defendant as the rapist. Defendant now appeals this conviction citing three issues for our consideration.

Defendant's first contention is that the trial judge committed reversible error in refusing to suppress the in-court identification of defendant by the victim. Defendant argues that it was not possible for the victim to identify defendant at the trial independently of her observation of him during the prior illegal confrontations. We disagree.

Even though the mirror and lineup identifications were found to be illegal and violative of defendant's rights under *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and consequently *per se* inadmissible as evidence, *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), an in-court identification may still be made if, but only if, the prosecutor is first able to establish by clear and convincing evidence that the in-court identification is based upon observations of the suspect other than the illegal confrontations. *United States v Wade, supra; People v Hutton,* 21 Mich App 312 (1970). Whether there is an independent source is a question for the court, to be made outside the presence of a jury, even though that question involves issues of fact. *People v Hutton, supra; People v Edmonds,* 32 Mich App 172 (1971). In making this determination, the proper test for the trial court to apply, according to *Wade,* is that quoted in *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963):

"[W]hether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." See *United States v Wade,* 388 US at 241; 87 S Ct at 1939; 18 L Ed 2d at 1165; *People v Hutton, supra,* 326.

The various factors to be considered in applying this test are: the witness's prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pretrial description and defendant's actual appearance; any identification of another person before confrontation; photographic identification before confrontation; failure to identify defendant on a prior occasion; and the

lapse of time between the alleged act and the confrontation identification. *United States v Wade,* 388 US at 241; 87 S Ct at 1939; 18 L Ed 2d at 1165; *People v Hutton, supra,* 326. Also for consideration is any uncertainty in the witness's response to whether the witness could have identified defendant at trial had he not seen him at the illegal pretrial confrontation. *People v Hutton, supra,* 326.

In the present case, the trial court determined from the evidentiary hearing that:

"She [complainant] is an intelligent and observant young lady. Unhesitatingly, convincingly, and clearly truthfully, she identified the defendant as her assailant in this courtroom and asserted that her identification was independent of any of her prior confrontations. * * * This Court notes that the witness had a limited but ample prior opportunity to observe the defendant immediately following the alleged criminal act. She saw his hair and forehead through the rear view mirror. She testified that she saw his profile as he left the car for some 15 to 20 seconds. In addition, her description given to the police shortly after the attack coincides fairly closely, as closely as one could reasonably expect, to the defendant's actual appearance and description. She testified that she has never failed to identify the defendant on any prior occasion and that she has never identified anybody else as her assailant. The court further notes that she was not uncertain. In fact, she was absolutely certain in her response to the question concerning whether she could identify the defendant had she not seen him at any pretrial confrontation.

"The court, therefore, finds on this question that the prosecution has been able at this hearing to establish by clear and convincing evidence that the in-court identification, thus far, is based upon observations of the suspect other than the line-up and one-way mirror identifications."

We fully concur with the trial court. As this

Court stated in *People v Nugent,* 21 Mich App 58, 64 (1969):

"It seems to us on the present record the complainant's testimony if believed, sustains the trial court's finding and consequently its ruling. The question whether there was an independent source thus narrows to one of credibility. This Court will not substitute its judgment on the credibility of a witness for that of the trier of fact. *People v Szymanski* (1948), 321 Mich 248; *People v Williams* (1966), 3 Mich App 272. The trial court, sitting as the trier of fact at the hearing, chose to believe the complainant's testimony."

Here also, by choosing to accept the trial court's belief as to the credibility of complainant's testimony, we find that from the record there is clear and convincing evidence that the in-court identification was not tainted by the prior illegal identifications. Consequently, there was no error in allowing the complainant to identify defendant in the presence of the jury.

Second, defendant argues that the trial judge committed reversible error in permitting the prosecuting attorney to cross-examine defendant's brother, who testified as an alibi witness for defendant, concerning his failure to come forward with the alibi at any time prior to trial. Defendant also alleges that the prosecuting attorney was thereafter erroneously permitted to argue to the jury that the failure of the alibi witness to come forward at an earlier date should be considered as bearing upon the witness' credibility. In permitting this prosecutorial comment on the delay in presenting the alibi defense by the witness, defendant contends that the prosecutor, through innuendo and unconstitutional inference, effectively denied him, David McClow, his constitutional right to remain silent.

The extent and control of cross-examination in a prosecution for a crime is largely within the sound discretion of the trial judge, and unless such discretion is abused, an appellate court will not interfere. *People v Roger Johnson,* 382 Mich 632 (1969); *People v Connor,* 348 Mich 456 (1957); *People v Fedderson,* 327 Mich 213 (1950). We can find no abuse of discretion. In *People v MacCullough,* 281 Mich 15, 26 (1937), the Court said:

"A witness may, on cross-examination, be shown to have made statements inconsistent with his testimony. *Gibbs v Linabury,* 22 Mich 479 (7 Am Rep 675); *Graham v Myers,* 67 Mich 277; *Lepard v Railroad Co,* 166 Mich 373 (40 LRA [NS] 1105). And, if there is anything suspicious in the character of the testimony of a witness, he may be subject to rigid cross-examination. *People v Palmer,* 105 Mich 568. So the conduct of a witness inconsistent with his testimony may be shown. *People v Farrell,* 137 Mich 127." See *Gonzalez v Hoffman,* 9 Mich App 522, 525 (1968).

Here, it was not improper cross-examination to interrogate the witness as to the conduct on his part at variance and inconsistent with what would be natural or probable if his statements on his direct examination were true. The credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony. *People v MacCullough, supra.* It was within the jury's province to determine the credibility of all the witnesses, including any whose testimony tends to establish an alibi. *People v Loudenslager,* 327 Mich 718 (1950).

Turning now to the alleged impermissible prosecutorial comment, we are cognizant that defendant failed to make a reasonable objection to the argument of which he now seeks to complain. Having

failed to present to the trial court an opportunity to correct any harm attributable to the prosecutor's remarks, defendant may not raise this objection for the first time on appeal. *People v Felton Alexander,* 17 Mich App 497 (1969); *People v Perkins,* 11 Mich App 170 (1968); *Gonzalez v Hoffman, supra.* Furthermore, the trial judge correctly charged that when an alibi defense is presented "the law does not require or place the burden upon a defendant to prove that he was not present at the time and place of the commission of the alleged offense", but on the contrary, "the law requires and places the burden upon the prosecution to prove beyond a reasonable doubt that the defendant was present at the time and place of the commission of the alleged offense".

Defendant's final argument is that the prosecuting attorney caused reversible error during the cross-examination of Janet Barrows, a character witness on behalf of the defendant. On direct examination Mrs. Barrows testified that defendant had a good reputation in the community for truth and veracity, and that she would believe him under oath. Thereafter, on cross-examination the prosecuting attorney began to inquire of Mrs. Barrows, "Have you ever heard of the fact that David McClow has approached women and — ", but was prevented from finishing the question by a defense objection that was sustained.

Generally, a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to rumors or reports of particular acts imputed to defendant and as to what the witness has heard of specific charges of misconduct made against the defendant, not to establish such acts but to test the credibility of the character

witness, by ascertaining his good faith, information and accuracy; such cross-examination being limited as to time and, in some instances, place. *People v Dorrikas,* 354 Mich 303 (1958); *People v Rosa,* 268 Mich 462 (1934); *People v Hill,* 258 Mich 79 (1932); see *People v Basemore,* 36 Mich App 256 (1971). Here, even though Mrs. Barrows was a character witness, her testimony was carefully restricted to the fact that defendant had a good reputation in the community for *truth and veracity.* She gave no testimony as to defendant's honesty and integrity, morality, or as a peaceful and law abiding citizen, etc. Nor did she testify to his character or reputation in general. Thus, under the aforementioned rule, it was improper for the prosecuting attorney to test the credibility of Mrs. Barrows as to any subject but defendant's truth and veracity, for this was the only information she offered. For us to rule otherwise, would open the door to abuse of this rule and allow otherwise inadmissible evidence to be presented at the expense of an accused.

There is no question that once the prosecutor posed the question to the character witness in the presence of the jury inferring similar prior misconduct by the defendant, no amount of instruction by the court could erase the prejudice from the jury's mind. This was inflammatory and prejudicial. This action, coupled with the prosecutor's comments which we did not consider grounds for appeal because not preserved by timely objection, convinces us that such action was deliberate for purpose of prejudice.

Hence the statement in 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 720, p 913, quoted in *People v Wolke,* 10 Mich App 582, 587 (1968):

"When objectionable testimony which was not delib-
erately injected into the case is promptly purged from
the record and the jury instructed to disregard it, the
irregularity should not be held to constitute reversible
error in the absence of persuasive showing of preju-
dice,"

is the reverse of this case. The court sought to give
corrective instructions but these could not erase
the prejudicial effect, especially as there appeared
to be no factual basis to justify the question.
Defendant was deprived of a fair trial.

For this reason we reverse and remand for new
trial.

All concurred.