PEOPLE v PERKINS

Docket No. 70542. Submitted November 16, 1984, at Detroit.—Decided
March 4, 1985. Leave to appeal applied for.

Defendant, Douglas R. Perkins, was convicted of armed robbery
following a bench trial in the Wayne Circuit Court. The trial
court, John H. Hausner, J., sentenced defendant to from 10 to
15 years in prison. Defendant appeals. *Held:*

1. Trial counsel's failure to move *in limine* to suppress
references to defendant's prior convictions for impeachment
purposes and failure to advise defendant of the availability of
such a motion was ineffective assistance of counsel. However,
the errors did not deprive the defendant of a fair trial since the
trial judge, who was also the trier of fact, concluded that the
defendant's testimony would not have affected the verdict.
Inadequate assistance or a major mistake by an otherwise
competent lawyer does not justify reversal unless, but for
counsel's mistake, the defendant would have had a reasonably
likely chance for acquittal. Here, there is no showing that the
errors had any effect on the judgment.

2. The trial court erred in admitting into evidence the
testimony of a police officer regarding a possible explanation
for a prior inconsistent statement made by the victim. The
error was, however, harmless beyond a reasonable doubt.

3. It was proper for the prosecutor to cross-examine the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law § 985.

Modern status of rules and standards in state courts as to adequacy
of defense counsel's representation of criminal client. 2 ALR4th
27.

[2] 81 Am Jur 2d, Witnesses § 597.

[3] 5 Am Jur 2d, Appeal and Error §§ 783, 786, 803.

[4] 81 Am Jur 2d, Witnesses § 539.5.

Impeachment of defense witness in criminal case by showing wit-
ness' prior silence or refusal to testify. 20 ALR4th 245.

[5] 21 Am Jur 2d, Criminal Law §§ 580-586.

50 Am Jur 2d, Larceny §§ 178-180.

What conduct amounts to an overt act or acts done toward commis-
sion of larceny so as to sustain charge of attempt to commit
larceny. 76 ALR3d 842.

[6] 21 Am Jur 2d, Criminal Law § 527.

defendant's non-alibi witness, Gerald Spears, concerning his failure to come forward with exculpatory information. The credibility of a non-alibi witness may be attacked by showing that he failed to speak or act when it would have been natural for him to do so if the facts were in accordance with his testimony. Given the close relationship that existed between Gerald Spears and the defendant, the involvement of Mr. Spears' own wife in the case and the nature and extent of Mr. Spears' personal knowledge, a logical inference may be drawn that if what Mr. Spears said at trial was true he would have brought it to the attention of the police long before then.

4. The difference between a prior conviction for larceny in a building and attempted larceny in a building is insignificant for the purpose of considering prior convictions in determining a sentence. Therefore, resentencing is not required because of the trial judge's erroneous reference at sentencing to defendant's earlier conviction as one for larceny in a building instead of attempted larceny in a building.

5. The presentence report which merely stated that probation was not available sufficiently complied with the statutory mandate that a presentence report include a specific written recommendation for disposition.

Affirmed.

1. CRIMINAL LAW — ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL — MISTAKES — APPEAL.

Inadequate assistance or a major mistake by an otherwise competent lawyer does not justify reversal unless, but for counsel's mistake, the defendant would have had a reasonably likely chance for acquittal.

2. TRIAL — WITNESSES — IMPEACHMENT.

It is well settled in Michigan that an impeached witness may explain away the effect of an alleged inconsistency by relating whatever circumstances would remove it.

3. CRIMINAL LAW — APPEAL — EVIDENCE — HARMLESS ERROR.

Error in the admission of evidence does not require reversal where such error is harmless beyond a reasonable doubt; if it is reasonably possible that, in a trial free of the error complained of, even one jury member might have voted to acquit the defendant, then the error was not harmless, and the defendant must be retried; if, on the other hand, the proof was so overwhelming, aside from the taint of the error, that all reasonable jurors would find guilt beyond a reasonable doubt, then the conviction must stand.

4. CRIMINAL LAW — WITNESSES — NON-ALIBI WITNESSES — IMPEACH-
MENT.

It is proper for a prosecutor to cross-examine a non-alibi defense
witness concerning his failure to come forward prior to trial
with the information which he testifies to at trial where the
witness possesses information of such a nature that the witness
would have a natural tendency to come forward with it prior to
trial.

5. CRIMINAL LAW — SENTENCING — PRIOR CONVICTIONS — LARCENY
IN A BUILDING — ATTEMPTED LARCENY IN A BUILDING.

Resentencing is not required where a trial judge, in sentencing a
defendant convicted of armed robbery, erroneously referred to
a prior conviction as one for larceny in a building instead of for
attempted larceny in a building; the difference between a prior
conviction for larceny in a building and attempted larceny in a
building is insignificant for the purpose of considering prior
convictions in determining a sentence.

6. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORTS.

A presentence report which merely states that probation is not
available to the defendant sufficiently complies with the statu-
tory mandate that a presentence report include a specific
written recommendation for disposition (MCL 771.14; MSA
28.1144).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Edward Reilly Wilson,* Deputy
Chief, Civil and Appeals, and *Rosemary A. Gordon,*
Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Gins-
berg),* for defendant on appeal.

Before: HOOD, P.J., and BRONSON and R. L. TAH-
VONEN,* JJ.

R. L. TAHVONEN, J. Following a nonjury trial,
defendant was convicted of armed robbery, MCL
750.529; MSA 28.797, and was sentenced to from

---

* Circuit judge, sitting on the Court of Appeals by assignment.

10 to 15 years in prison. He appeals as of right and we affirm.

At trial, the victim, Lewis Rhinehart, testified that on September 10, 1982, at approximately 1:45 a.m. he was in the Captain's Pub located in Trenton, Michigan. As Rhinehart was getting ready to leave the pub, defendant asked him for a ride. Rhinehart agreed and while driving down Fort Street in a southerly direction he observed a pickup truck following him. Defendant pulled out a knife, told Rhinehart to pull over, placed the knife at his throat and demanded money. Defendant told Rhinehart that if he did not comply he would cut his throat. Rhinehart gave defendant approximately $70. Defendant then pulled the keys out of the ignition, threw them on top of Rhinehart's pickup truck and threatened to blow Rhinehart away if he followed defendant. Defendant jumped into a pickup truck which had pulled out from behind Rhinehart's vehicle. The truck pulled off and the victim gave chase. About a mile down the road, the victim saw a parked police car and stopped and informed the police officer in the car that "he had just been robbed—pull the truck over". The police officer stopped the truck occupied by defendant and driven by a woman named Irene Spears.

Irene and Gerald Spears testified for the defendant. Mr. Spears said that on September 10, 1982, he and his wife Irene picked up defendant and drove to the Captain's Pub around midnight. Before leaving the pub, Gerald Spears gave his wife approximately $100 which she placed in her bra. Spears left the bar with his wife and defendant. Mr. Rhinehart left the pub at about the same time and called defendant over to his pickup truck. Defendant got into Rhinehart's truck and a few seconds later got out and entered the Spearses'

truck. During this period, Mr. Spears was sitting in a friend's vehicle preparing to go home. Irene Spears was in the Spears' truck and she and defendant drove off allegedly on their way to a nearby White Castle restaurant. Mr. Spears stated that he left the Captain's Pub parking lot at the same time as his wife, defendant and the victim. The victim was seen driving away by himself. Mr. Spears further testified that he was the owner of the knife earlier identified by Rhinehart as the one used in the assault.

Mrs. Spears testified that she left the Captain's Pub with her husband and defendant. After entering her pickup truck, she saw the victim in his vehicle. Shortly thereafter, defendant entered Rhinehart's truck and after a few minutes defendant walked over to the Spearses' truck and asked Irene for a ride to Wyandotte. Mrs. Spears agreed and she and defendant left the parking lot driving in a northerly direction down Fort Street. While driving down Fort Street, Mrs. Spears saw Rhinehart following closely behind her truck. Rhinehart allegedly bumped the Spearses' vehicle several times. Frightened, Irene began driving faster in an attempt to lose him. She saw a police officer and drove past him while honking her horn. The police officer stopped the Spearses' vehicle and informed Irene that Rhinehart claimed that he had just been robbed. Irene Spears identified the knife as that of her husband and the $99 confiscated from her as the money which her husband had allegedly given her at the Captain's Pub.

Based on the advice of his attorney, the defendant did not testify.

Defendant first argues that the trial court erred in denying his motion for a new trial on the basis that he had been denied the effective assistance of counsel.

Following a post-conviction hearing held in accordance with *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), the trial court concluded that defendant had not received the effective assistance of counsel. This finding was premised upon counsel's failure to move *in limine* to suppress reference to prior convictions for impeachment purposes, MRE 609, and failure to advise defendant of the availability of such a motion. However, the trial court further found that the ineffective assistance of counsel had not deprived the defendant of a fair trial because his testimony would not have altered the verdict or outcome. The court reasoned that the proposed testimony of the defendant would have generally followed the contours of the disbelieved testimony of Mr. and Mrs. Spears and would have been at odds with the accepted testimony of the victim. In short, the defendant's testimony would not have been sufficient to raise a reasonable doubt in the mind of the trial judge concerning the defendant's guilt.

Since the trial judge, who was also the trier of fact, concluded that the defendant's testimony would not have affected the verdict, we agree that counsel's errors did not deprive the defendant of a fair trial. Inadequate assistance or a major mistake by an otherwise competent lawyer does not justify reversal unless, but for counsel's mistake, the defendant would have had a reasonably likely chance for acquittal. *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977). Since there is no showing that the errors had an effect on the judgment, defendant's conviction ought not to be set aside. *Strickland v Washington,* — US —; 104 S Ct 2052, 2067; 80 L Ed 2d 674, 696 (1984).

Second, the defendant argues that the trial court erred by admitting testimony of a police officer regarding a possible explanation for a prior incon-

sistent statement made by the victim, Mr. Rhine-hart.

During cross-examination, Rhinehart admitted that he falsely told a police officer that his brother was with him at the time of the robbery. Later, the police officer to whom the statement was made was permitted, over objection by defense counsel, to opine that the victim said his brother was with him because the victim was driving on a sus-pended license and might want to claim that the brother was driving to avoid trouble for himself.

Although it is well settled in Michigan that an impeached witness may explain away the effect of the alleged inconsistency by relating whatever circumstances would remove it, *People v Droste,* 160 Mich 66; 125 NW 87 (1910); *People v Davis,* 217 Mich 661; 187 NW 390 (1922), there was no basis for permitting *the police officer* to speculate as to why the victim claimed that his brother was with him at the time of the incident. If the prose-cutor wanted the victim to explain the prior incon-sistent statement, the *victim* should have been asked to testify as to the status of his license and the effect it had on his statements to the police.

The trial court did, therefore, err in admitting into evidence the police officer's testimony. How-ever, we are firmly convinced that this error was harmless under the standard enunciated in *People v Swan,* 56 Mich App 22, 33; 223 NW2d 346 (1974). Although the victim's credibility was central to the case, the defendant was fully permitted to call to the court's attention the prior inconsistent statement and the effort at rehabilitation was of little moment in an overall assessment of who was telling the truth.

Third, the defendant claims that the trial court erred in permitting the prosecutor to cross-exam-ine the defendant's non-alibi witness concerning

his failure to come forward with exculpatory information.

On cross-examination, Gerald Spears testified that he had known defendant for four or five years. Defendant was a former employee at a gas station managed by Mr. Spears and the two men were good friends. Spears admitted that he did not go to the police with information concerning the fact that: (1) he was the owner of the knife confiscated by the police at the time that defendant was arrested, (2) he saw defendant leaving the Captain's Pub parking lot with his wife, and (3) he had given his wife $100 before she left the pub with defendant. The prosecutor questioned Spears about his failure to come forward with the information available to him and the following exchange took place:

"*Q.* You say he's a good friend of yours. You see him often?

"*A.* Yes.

"*Q.* Weren't you concerned about going to the police with this information?

"*A.* No one asked me. I didn't know what was going on until the other day.

"*Q.* You had testimony that exculpated the defendant and you never saw fit to go to the police and say that you had the money and put this money in your wife's bra? Wouldn't that be a concern to you, to get your friend out of jail possibly?

"*A.* Not till the court date.

"*Q.* Why then?

"*A.* Because they weren't supposed to have him. He was in jail until I come."

In *People v McClow,* 40 Mich App 185, 193; 198 NW2d 707 (1972), this Court held that it was proper to cross-examine an alibi witness concerning his failure to come forward with the alibi prior

to trial because the credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural for him to do so if the facts were in accordance with his testimony. *People v MacCullough,* 281 Mich 15; 274 NW 693 (1937).

Later, in *People v Kraai,* 92 Mich App 398; 285 NW2d 309 (1979), this Court held that attempting to discredit an alibi witness by insinuating that he or she failed to act as a good citizen in coming forward with information is not permissible. This Court emphasized the fact that the witness had no legal duty to report whatever knowledge she may have had. Although the holdings in *McClow* and *Kraai* appear to be at variance, the facts concerning the alibi witnesses in the two cases are distinguishable. In *Kraai* the alibi witness who failed to come forward was apparently merely a girlfriend of the defendant's friend. The witness testified that what little "inside information" she had concerning defendant's escape was communicated to her by her boyfriend. The witness also stated that she herself had little desire to become involved. In a footnote, this Court stated that the witness's failure to report the information available to her to the police did not support any logical inference of bias. 92 Mich App 411, fn 8. In contrast, the alibi witness in *McClow* was the defendant's brother and the information available to him was apparently based upon his own personal knowledge.

In *People v Grisham,* 125 Mich App 280; 335 NW2d 680 (1983), this Court considered the issue of whether a prosecutor should be allowed to cross-examine a *non-alibi* witness about her failure to go to the police concerning her account of the events preceding an accident which resulted in defendant's being charged with a criminal offense. The

Court discussed the holdings in *McClow* and *Kraai* and stated in pertinent part:

"We also find improper the prosecutor's inquiry into Janet Capps's failure to go to the police with her account of events preceding the accident when she learned that defendant had been charged with a crime. Panels of this Court have disagreed as to the propriety of the prosecutor's inquiry into an alibi witness's failure to report to the police. In *People v McClow,* 40 Mich App 185, 193; 198 NW2d 707 (1972), and *People v Diaz,* 98 Mich App 675; 296 NW2d 337 (1980), such questioning was held permissible on the theory that credibility of a witness may be attacked by showing that he failed to speak or act when it would have been natural to do so if the facts were in accordance with his testimony. In *People v Kraai,* 92 Mich App 398, 411; 285 NW2d 309 (1979), *lv den* 407 Mich 954 (1980), however, the Court condemned the prosecutor's attempt to discredit an alibi witness by attacking such witness's failure to report to the police where the witness had no legal duty to report whatever knowledge she had to the state in advance of trial. 'Discrediting an alibi witness by insinuating her failure to act as a good citizen is not permissible.' See also *People v Gwinn,* 111 Mich App 223, 259; 314 NW2d 562 (1981) *(partial dissent by* R. M. MAHER, P.J.).

"Even assuming the rationale in *People v McClow* is defendable where an alibi witness is concerned, we agree with defendant that an entirely different situation exists when the pretrial conduct of a non-alibi witness is being considered. A person who was with a defendant at the time the crime occurred would necessarily have the knowledge that the defendant could not possibly have committed the charged offense. In such a case it is perhaps arguably unreasonable for the witness to fail to bring such information to the attention of the state.

"On the other hand, a non-alibi witness, although possessed of potentially relevant and material information, is not necessarily aware that the information available to him or her will provide a defense to the charged offense or be relevant to the issues raised at

trial. The information possessed by Ms. Capps was not of such a nature that she would have had a 'natural tendency' to take it to the government prior to trial if it were true. The prosecutor should not have been permitted to insinuate her testimony was fabricated because she failed to do so." 125 Mich App 287-288.

We agree with the standard set forth in *Grisham* regarding the cross-examination of a non-alibi witness who possesses information which is "not of such a nature that the witness would have a 'natural tendency' to take it to the government prior to trial if it were true". However, the *Grisham* Court did not address the standard to be used for determining the scope of cross-examination when a non-alibi witness possesses information of such a nature that the witness would have a "natural tendency to come forward with it". In this Court's opinion, the *McClow* standard should be applied in this latter category of cases.

In the instant case, Spears testified that he had been a good friend of defendant's for some time. He stated that he witnessed the defendant leave the Captain's Pub parking lot in the pickup driven by his wife. At trial Spears claimed that the knife allegedly used to rob the complainant belonged to him. He further testified that the $99 allegedly stolen from the victim and confiscated from his wife by the police was actually money Mr. Spears had given his wife prior to leaving the pub. None of this "inside information" was communicated to Spears through a third party, as was the case in *Kraai*. Spears's testimony was entirely based upon personal knowledge. Furthermore, Spears testified that not only did he know that defendant was arrested for robbing the victim at knifepoint but also that he knew that the authorities were not "supposed to have" defendant. Given the close relationship that existed between Spears and the

defendant, the involvement of Mr. Spears's own wife in the case and the nature and extent of Mr. Spears's personal knowledge, a logical inference can be drawn that if what Spears said at trial was true he would have brought it to the attention of the police long before then. We believe *McClow, supra,* controls and obviates any claim of error by the defendant.

Fourth, the defendant argues that he should be resentenced because the trial court exercised its sentencing discretion on the basis of inaccurate information.

The presentence report provided to the trial court referred to two prior convictions, one for unarmed robbery and one for *attempted* larceny in a building. During his remarks at sentencing, the trial judge referred to an earlier conviction for larceny in a building. Defendant now argues that the trial court sentenced on the basis of a prior conviction for larceny in a building instead of attempted larceny in a building and, therefore, the defendant should be resentenced.

We disagree. Although larceny in a building is a four-year offense and attempted larceny in a building is a two-year offense, we think the difference insignificant for the purpose of considering prior convictions in determining a sentence. The offenses are treated the same for purposes of habitual offender prosecutions, *People v Cavanaugh,* 127 Mich App 632; 339 NW2d 509 (1983), and computing prior record variables under the sentencing guidelines.

Fifth, and finally, defendant contends that he must be resentenced because the original presentence report did not include a specific evaluation and recommendation for disposition as required by MCL 771.14; MSA 28.1144.

A portion of the statute requires that the pre-

sentence report contain "a specific written recommendation for disposition". In this case, the presentence report merely stated that probation was not available.

In *People v Joseph,* 114 Mich App 70, 78; 318 NW2d 609 (1982), *lv den* 417 Mich 877 (1983), this Court held that a presentence report recommending that defendant not be placed on probation sufficiently complied with the statutory mandate that a presentence report "include a specific written recommendation for disposition". On the basis of *Joseph,* this issue is without merit.

We note in passing the related claim that there was no evaluation of and prognosis for defendant's adjustment in the community. In light of the unavailability of probation, we believe that the report adequately addressed those concerns as required by statute.

All of the issues raised by defendant have been reviewed. None merit reversal.

The defendant's conviction is affirmed.