*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 3, 2019

Plaintiff-Appellee,

v

No. 336247
Wayne Circuit Court
LC No. 15-010161-01-FC

KEVIN SMITH,

Defendant-Appellant.

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of conspiracy to commit armed robbery, MCL 750.157a, MCL 750.529, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 65 to 90 years in prison for his conspiracy to commit armed robbery conviction, 5 to 10 years imprisonment for his felon-in-possession conviction, and two years in prison for his felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant was released from prison in December 2014, after serving a sentence for conviction of home invasion. In January 2015, defendant conspired with Robert Williams, Dondiego Adams, and Timothy Russell to engage in a string of armed robberies. They planned to wear gloves and masks to disguise their appearance, approach people as they were entering their homes, hold them at gunpoint, and demand entry into the home. Once inside the homes, they stole money, jewelry, guns, debit cards, and credit cards. The men targeted the elderly to

---

[1] Defendant was also charged with, but ultimately acquitted of, armed robbery, MCL 750.529, and assault with intent to commit murder (AWIM), MCL 750.83, arising out of the shooting of United States District Court Judge Terrence Berg.

-1-

get more money and less resistance from their victims. Eventually, they expanded the operation and robbed businesses and people sitting in their cars at night. From January 2015 until May 2015, some combination of defendant, Williams, Adams, and Russell committed or attempted at least 10 armed robberies.

Defendant was arrested and charged for one of the robberies. He pleaded guilty to that sole armed robbery and felony-firearm. Williams and Adams also pleaded guilty to one robbery, and agreed to testify against defendant regarding the remaining robberies in exchange for reduced sentences.

Over the course of a 10-day trial, the prosecution presented evidence supporting the conspiracy, including text messages between defendant and Russell discussing guns and masks, pawn shop receipts for stolen items, video surveillance showing defendant and Russell using victims' debit or credit cards at ATMs, surveillance video from a robbery at a jewelry store, cell phone location evidence placing defendant in the area of some of the robberies, two handguns found in defendant's home, distinctive clothing found in Russell's and Williams's homes, defendant's palm print on an envelope at a jewelry store robbery, and firearm tool mark evidence showing that one of the guns found in defendant's home definitively fired some bullet shells found at the scene of one of the robberies. Williams and Adams also testified that defendant came up with the plan to commit "walk-in" style robberies that defendant was involved in almost all of the robberies, and that he provided some of the guns used during those robberies. Both of defendant's coconspirators testified at length regarding the conspiracy.

Defendant testified at trial and admitted that he owned the two handguns that were found in his house even though he knew he was a felon who was not permitted to own guns. Defendant also admitted that he committed the jewelry store robbery, but denied any involvement in the plan to commit a string of "walk-in" style robberies. He also admitted that he appeared in a surveillance video using a victim's debit card at an ATM. Defendant claimed he only used the debit card, but did not commit the armed robbery where it was stolen. During cross-examination, defendant was impeached using prior inconsistent statements he made during a police interview in May 2015.

Defendant was convicted, sentenced, and this appeal followed. While this appeal was pending, defendant moved the trial court to obtain cellular telephone records and for a new trial or a *Ginther*[2] hearing. The trial court granted defendant's motion to obtain the records. Later, the trial court also ordered that an expert witness be appointed to assist defendant in his review of the records. Despite some delay because of the involvement of the Federal Bureau of Investigation (FBI), the records were turned over and defendant's appellate counsel informed this Court that he was voluntarily dismissing defendant's motion for a new trial or a *Ginther* hearing before the trial court decided it. The case is now before us for summary review and we affirm.

## II. TESTIMONY OF COCONSPIRATORS

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant argues that the trial court abused its discretion by allowing Williams and Adams to testify at trial. We disagree.

"When the issue is preserved, we review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

Defendant argues that the testimony of his coconspirators, in their entirety, should not have been admitted.[3] Longstanding Michigan caselaw supports that coconspirators, accomplices, and codefendants are competent witnesses that provide relevant and admissible testimony. See *People v Hana*, 447 Mich 325, 361; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993) (holding that "[a] defendant normally would not be entitled to exclude the testimony of a former codefendant . . . and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant"); *People v MacCullough*, 281 Mich 15, 28; 274 NW 693 (1937) citing *People v Mol*, 137 Mich 692, 693; 100 NW 913 (1904) (holding that had a coconspirator been called to testify, his testimony would have been admissible in the trial of another coconspirator even where the prosecution had not alleged a charge of conspiracy); *People v DeLano*, 318 Mich 557, 568; 28 NW2d 909 (1947) (stating that a person could be convicted of a conspiracy charge based solely on the testimony of a coconspirator). Defendant's argument that Adams's and Williams's testimony as coconspirators was inadmissible in its entirety because of a lack of independent evidence of a conspiracy is entirely without merit. *Id.* Independent evidence of a conspiracy is not necessary to allow for the in-court testimony of a coconspirator.

## III. TESTIMONY OF DEFENDANT'S PAROLE OFFICER

Defendant argues that the testimony of his parole officer violated his right against self-incrimination and resulted in the admission of prejudicial testimony regarding defendant's previous prison term. We disagree.

---

[3] Importantly, defendant has not argued that the trial court improperly admitted out-of-court statements by coconspirators under MRE 801(d)(2)(E). We note, however, that even if defendant had limited his argument to out-of-court statements by coconspirators, his appeal still would have failed. We have reviewed the entire record and agree with the trial court that the requirements for admitting such statements—including the requirement that there be sufficient independent evidence of a conspiracy before admitting them—were fulfilled. MRE 801(d)(2)(E); *People v Martin*, 271 Mich App 280, 316; 721 NW2d 815 (2006), aff'd in part 482 Mich 851 (2008); *People v Jenkins*, 244 Mich App 1, 22-23; 624 NW2d 457 (2000). The in-court testimony of Williams and Adams alone was sufficient independent evidence of the conspiracy to satisfy the standard for admitting out-of-court statements of coconspirators. MRE 801(d)(2)(E).

To preserve an evidentiary issue for appeal, an issue must be raised before, addressed by, and decided by the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). However, "an objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Bulmer*, 256 Mich App 33, 34-35; 662 NW2d 117 (2003). Defendant moved for a mistrial on the basis of the parole officer's testimony regarding defendant's imprisonment, which the trial court denied because it was common knowledge that parole officers supervise individuals released from prison, and thus defendant suffered little (if any) prejudice. Thus, the evidentiary issue presented on appeal is preserved, but not his constitutional claim, which he did not raise at trial.

We review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility. *Chelmicki*, 305 Mich App at 62. This Court generally reviews "de novo constitutional issues . . . ." *People v Harris*, 499 Mich 332, 342; 885 NW2d 832 (2016). However, this Court must review the "unpreserved claim for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks omitted).

Defendant did not suffer prejudice because the evidence regarding his previous conviction and prison sentence was properly admitted. Specifically, before defendant began testifying, the prosecution informed the trial court that it would be asking defendant about his previous conviction and prison sentence for home invasion under MRE 609(a)(2). The trial court agreed that the questioning was proper under MRE 609(a)(2), noting that home invasion had an element of theft, was punishable by more than one year, and that the conviction was more probative than prejudicial. Defendant does not challenge the trial court's decision in that regard on appeal. Thus, even without the testimony of the parole officer, the jury would have been informed about defendant's prior conviction and sentence for home invasion. We typically will not find reversible error where evidence is cumulative to evidence properly admitted at trial. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Given the cumulative nature of the parole officer's testimony, the apparently improper admission of that evidence simply was not outcome-determinative,[4] and thus, does not require reversal for a new trial. *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015); *Jordan*, 275 Mich App at 667.

---

[4] The trial court also provided a curative instruction immediately following the parole officer's testimony, which cured any error. "Jurors are presumed to follow the court's instructions, and

Defendant argues that his right against self-incrimination was violated by the parole officer's testimony in its entirety. Defendant argues that the parole officer's testimony forced him to testify in order to rebut her claim that certain telephone numbers belonged to defendant. "The introduction of any evidence which tends to implicate the defendant increases the pressure on him to testify but this pressure does not violate his privilege against self-incrimination." *People v Gallagher*, 404 Mich 429, 437; 273 NW2d 440 (1979). "The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." *Barnes v United States*, 412 US 837, 847; 93 S Ct 2357; 37 L Ed 2d 380 (1973). Consequently, defendant's argument that the damaging effect of the parole officer's testimony forced him to testify is legally without merit. *Id*.; *Gallagher*, 404 Mich at 437.

## IV. IMPEACHMENT OF DEFENDANT

Defendant argues that the trial court wrongfully allowed the prosecution to impeach his testimony using his prior inconsistent statements during a police interview. We disagree.

At trial, the prosecution moved the trial court in limine to allow the use of false exculpatory statements in defendant's police interview as substantive evidence of defendant's guilt, and the trial court agreed over defendant's objection. However, the prosecution never admitted the transcript or video of defendant's police interview. Instead, the prosecution used the police interview to impeach defendant's testimony at trial, by pointing out that defendant told a different story at the interview than he told at trial. Defendant argues on appeal that defendant's statements during the interview should not have been used to cross-examine him, and that such use violated his constitutional right to due process and a fair trial. That argument, having not been made before or addressed by the trial court, is not preserved for our review. *People v Hershey*, 303 Mich App 330, 349; 844 NW2d 127 (2013); *Bulmer*, 256 Mich App at 34-35.

Defendant's preserved issues regarding the admission of evidence for impeachment purposes is reviewed for an abuse of discretion, *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015) (quotation marks omitted), and his unpreserved constitutional argument for plain error affecting defendant's substantial rights. *Roscoe*, 303 Mich App at 648.

"In general, where a defendant takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . ." *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995) (quotation marks and citation omitted; alteration in original). When defendant waived his constitutional right to not testify, he subjected himself to proper cross-examination under the Michigan Rules of Evidence. See *People v Clary*, 494 Mich 260, 279; 833 NW2d 308 (2013) (quotation marks omitted; alterations in original) ("Indeed, if the Fifth Amendment were interpreted to confer a right to set forth to the jury all the facts which tend in [the defendant's] favor without laying himself open to cross-examination upon those facts, [i]t would make of the Fifth Amendment not only a human

---

instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017).

safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell."). Under MRE 607, "[t]he credibility of a witness may be attacked by any party . . . ." One such manner of attacking credibility is to question a witness—here, defendant—on cross-examination regarding prior inconsistent statements. MRE 611(c); MRE 613. Specifically, MRE 613(a) permitted the prosecution to question defendant "concerning a prior statement" he made, "whether written or not . . . ." Furthermore, under MRE 613(b), the prosecution was permitted to question defendant regarding prior statements that were inconsistent with his trial testimony. In sum, defendant's decision to testify allowed the prosecution to cross-examine defendant like it would any other witness. Here, defendant was properly impeached by prior inconsistent statements he made during an interview with police. There was no error in doing so. *Clary*, 494 Mich at 278-279; MRE 613.

Defendant also argues that his rights to due process and a fair trial were violated because he thought he was lying about the jewelry store robbery, and not the string of "walk-in" style robberies involved in the conspiracy. Our Supreme Court and the United States Supreme Court have held that the purpose of cross-examining defendant, including impeaching defendant's version of events, is to assist the factfinder in reaching the truth. *Clary*, 494 Mich at 278-279, citing *Jenkins*, 447 US at 238. The prosecution did just that by asking defendant to explain the differences in his testimony and police statements. Specifically, the prosecution noted that defendant told police that he was not involved in any robberies, but at trial testified that he committed the jewelry store robbery. Furthermore, the jury heard testimony from defendant that he purchased and owned two handguns when arrested, and the prosecution made the jury aware that during his statement to police, defendant stated that he did not own any guns. Defendant attempted to clarify his previous false statements, explaining to the jury that he was lying to police because he wanted to escape from being charged with the jewelry store robbery. In other words, defendant asserted that he did not intend to lie about his involvement in the "walk-in" style robberies, because he actually was not involved in those. Defendant's intent when he lied to the police during his police interview is not relevant to the question of whether the prosecution's questioning and the trial court's allowance of that questioning were proper. Defendant made prior inconsistent statements and he was properly confronted with those statements during cross-examination. MRE 613. Defendant explained to the jury his reasons for lying during the interview. This explanation allowed the jury to make the ultimate decision regarding whether to believe that defendant was lying about his involvement in all of the crimes or simply about his involvement in the jewelry store robbery. The cross-examination was proper to allow the jury to make that decision, and therefore, defendant's constitutional rights were not infringed. *Clary*, 494 Mich at 278-279, citing *Jenkins*, 447 US at 238; *Fields*, 450 Mich at 110.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to reversal of his convictions and a new trial on the basis of ineffective assistance of counsel. While we believe defendant may have waived this issue by voluntarily dismissing his postjudgment motion for a new trial or a *Ginther* hearing after the trial court entered orders allowing defendant to access the cellular telephone and record and appointing an expert to assist with analysis, *Buie*, 491 Mich at 312 (a defendant is not permitted to "harbor error as an appellate parachute"), we nonetheless consider defendant's arguments and find them lacking merit and factual support.

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016) (quotation marks omitted). "Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Id*. at 189-190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. "[I]n order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second guess matters of trial strategy. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (alteration in *Cooper*).

Defendant challenges defense counsel's alleged failure to obtain cellular telephone records for the telephone number attributed to "Kev" in the incriminating text messages sent in January 2015. Defendant's argument is three-pronged. First, he claims that the cellular telephone records would have shown that the telephone number in question did not belong to him. Second, location evidence from the cellular telephone would have established that defendant did not own the telephone. Third, the location evidence also could have been used to rebut allegations made in the affidavit supporting the search warrant for his home.

None of those arguments warrant relief for a multitude of reasons, the first of which is that defendant failed to establish the factual predicate for his claim. *Carbin*, 463 Mich at 600. As to the registration of the telephone, defendant has not provided any evidence on appeal that would suggest the telephone number in question was not registered to him. Thus, defendant failed to carry his "heavy burden" of proving that counsel was ineffective for allegedly not obtaining it. *Schrauben*, 314 Mich App at 190. Defendant's second and third arguments fail for the same reason—he has not provided any evidence on appeal that the location evidence of the cellular telephone in question would somehow prove that he did not send the text messages or

that the affidavit was incorrect.[5] On appeal, defendant is responsible for establishing the factual predicate for his claim, and he plainly has failed to do so. *Cooper*, 309 Mich App at 80. Thus, he has not provided grounds for reversal. *Schrauben*, 314 Mich App at 190.

Moreover, defendant did obtain the records, because he provides some of the records to this Court on appeal. However, for the one record he cites to, it only establishes that one cellular telephone is attributable to him and he admits to having the "248" number and that he contacted the number associated with "Kev" in the January 2015 text messages. According to the record, the contact between the two cellular telephones occurred between February 8, 2015, and February 12, 2015. Defendant argues that this is definitive proof that he was not the "Kev" in the text messages, requiring reversal of his convictions. Defendant misconstrues the records. As noted, the text messages in question were sent in January 2015, but the records he presents are from February 2015. Thus, defendant's proposed evidence does not support his contention that he did not have the telephone number in question in January 2015. Furthermore, it is common knowledge that people share cellular telephones. Indeed, it is entirely possible that, for the five-day span where both of defendant's cellular telephones were contacting each other, that he lent one of the telephones to another person. Considering the contact did not directly rebut the fact that defendant sent the text messages in January 2015, defendant fails to overcome his heavy burden and prove that defense counsel's decision was strategic. *Schrauben*, 314 Mich App at 190. Additionally, given the limited relevance of the evidence, defendant also fails to establish that introduction of the cellular telephone records would have changed the outcome of trial. Thus, the second prong of the analysis in *Strickland*, 466 US at 694, also fails.

Lastly, defendant argues that defense counsel was ineffective for failing to properly cross-examine Williams. As we have recently noted, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (quotation marks omitted; alteration in original). Additionally, defense counsel's decisions with respect to the scope of

---

[5] The second prong of the analysis in *Strickland*, 466 US at 694, also would not be fulfilled for this issue, because the relevance of the evidence was the content of the text messages, not the location from where they were sent. Defendant fails to explain how the cellular telephone's location when sending the messages would have somehow proved that he did not send them. Additionally, the challenged portion of the affidavit supporting the search warrant, which defendant provided to this Court, references defendant's "historical call detail records" that allegedly "revealed his cellular telephone to be in the geographic area" of certain events between February 7, 2015, and February 27, 2015. However, the limited version of those records provided by defendant, amounting to only five paragraphs, do not reveal which cellular telephone was being tracked. This is important because defendant admits to having two other cellular telephone numbers, which also could have been the cellular telephones being tracked. Consequently, once again, defendant has failed to establish the factual predicate for his claim that the cellular telephone location evidence for the number associated with "Kev" would have resulted in a suppression of the search warrant. *Cooper,* 309 Mich App at 80.

cross-examination are afforded the same deference. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

On appeal, defendant vaguely asserts that "there were inconsistencies with Williams['s] previous testimony and statements that were not effectively revealed . . . ." More specifically, defendant contends that defense counsel failed to make it clear to the jury that defendant was only being charged in the case because of plea deals obtained by Williams and Adams. Once again, defendant has failed to establish the factual predicate for his arguments. *Cooper*, 309 Mich App at 80. As to the alleged inconsistencies in Williams's testimony, defendant does not provide this Court with any guidance regarding which inconsistencies are being referenced. Absent establishing those facts, defendant has failed to carry his "heavy burden" to overcome the strong presumption that counsel was effective and his questioning of witnesses was strategic. *Muhammad*, 326 Mich App at 66; *Schrauben*, 314 Mich App at 190.

With respect to defendant's argument that defense counsel failed to question Williams and Adams regarding their plea deals, the record reveals the opposite. When questioning Williams, defense counsel elicited testimony that Williams initially denied any involvement in robberies. Then, when he was offered a plea deal to provide testimony against defendant, he changed his story. Defense counsel engaged in the same strategy when questioning Adams. Specifically, he had Adams admit that he initially denied any involvement in the robberies and then only changed his story when he was offered a plea deal to provide testimony against defendant. Therefore, contrary to defendant's argument on appeal, defense counsel made sure that the jury was aware that Williams and Adams were receiving generous plea deals for their testimony against defendant, thus exposing their motivation to lie. The scope of defense counsel's questioning was a matter of strategy, and we will not second guess that strategy simply because it proved unsuccessful. *Petri*, 279 Mich App at 412. Therefore, defendant has not provided any grounds warranting reversal for ineffective assistance of counsel.[6]

## VI. PROSECUTORIAL MISCONDUCT[7]

Defendant argues that the prosecutor committed misconduct by misstating law during closing argument. While we agree that the prosecutor misstated the law, the mistake does not warrant reversal. Defendant also argues that the prosecutor committed misconduct by knowingly admitting false evidence. We disagree.

In cases alleging prosecutorial misconduct, issues are "preserved by contemporaneous objections and requests for curative instructions . . . ." *Mullins*, 322 Mich App at 172 (quotation marks omitted). Defendant acknowledges that he did not object to the allegations of

---

[6] Considering the postjudgment procedural history in this case, we decline defendant's request to remand to the trial court for a *Ginther* hearing.

[7] We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as an indication that the prosecution engaged in intentional misconduct. *Jackson*, 313 Mich App at 425.

prosecutorial misconduct or request curative instructions, thus, this issue is not preserved, *Id.*, and is reviewed for plain error affecting defendant's substantial rights. *Roscoe*, 303 Mich App at 648.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id.* at 70. "[A] prosecutor is free to argue the evidence and all reasonable inferences arising from it as [it] relate[s] to . . . [the] theory of the case." *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2016) (quotation marks omitted; alterations in original). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 63. The prosecution, however, is not permitted to misstate the law. *People v Abraham*, 256 Mich App 265, 275-276; 662 NW2d 836 (2003).

Defendant's first argument is that the prosecutor erred by misstating law during closing argument. Defendant notes that the prosecutor improperly stated that the jury only needed to find that defendant had pleaded guilty to the sole robbery in order to find him guilty of conspiracy to commit armed robbery. However, when viewed in context, the poorly-worded statement by the prosecutor was a relatively minor error that was sufficiently cured by jury instructions:

> Now in order to prove conspiracy, I have to prove the elements of the crime beyond a reasonable doubt. The elements of the crime for conspiracy beyond a reasonable doubt are basically simple.

> The defendant and someone else agreed to commit an armed robbery. He specifically intended to help someone commit an armed robbery, and that the agreement took place between the period of January and May of 2015.

> You've heard ample testimony, ladies and gentlemen, not only of the agreement between the defendant and Mr. Williams and Mr. Adams and [Russell]. You also heard from the victims themselves time and time again about how they were in their home. They were robbed of their possessions, and the gun was pointed to their head.

> How their ATM cards were used, how things were pawned. You saw the pawn slips over and over and over again from Mr. Adams about how he went and pawned these items.

> So in order to have a conspiracy all it is is an agreement to commit a crime. That's all it is. Simple. We agree to commit a crime. And what evidence that we agree to commit a crime?

> Williams told us that. Then we have example after example after example of those crimes. We have the defendant under oath admitting that he committed those crimes back in November. That's all you need for a conspiracy.

His plea under oath is evidence that he is guilty of a conspiracy. He said those words under oath. That's all you need to convict him of conspiracy, ladies and gentlemen, that plea alone.

Thus, despite the prosecutor's mistaken summary at the end, immediately before making that statement, the prosecutor summarized the elements of the charged crime and the evidence establishing that crime. The prosecutor did not simply state that defendant's guilty plea was sufficient to convict him of conspiracy to commit armed robbery. Instead, the argument implied that there were certain elements for the crime and that there were several pieces of evidence supporting those elements—including Williams's testimony, pawn shop receipts, the victims' testimony, evidence of ATM cards being used, and defendant pleading guilty to committing the robbery. Additionally, before that statement, the prosecutor informed the jury that the trial court would provide the law, stating, "[t]he Judge is going to give you the law on what an agreement is, and agreement for conspiracy, but it is my job to show that beyond a reasonable doubt there was an agreement, that the defendant and someone else came together to an agreement." Later, the trial court itself informed the jury that the court provided the law and the arguments of the lawyers did not. The trial court then gave a detailed description of the proper elements required to prove a conspiracy to commit armed robbery. Defendant does not challenge the trial court's instructions on the elements provided to the jury.

In *People v Abraham*, 256 Mich App at 276, this Court provided the following reasoning for affirming a conviction despite a brief misstatement of law that occurred during the prosecutor's closing argument:

However, this remark was isolated, poorly worded, and slightly difficult to understand. Thus, it could have been a mistake and not error requiring reversal. Moreover, the trial court's instructions to the jury that the attorneys' arguments are not evidence, that the prosecution bears the burden of proof, and that the elements of the crime require [the appropriate] proof . . . likely cured any prejudice resulting from this statement. Given the evidence presented in this case, this nonstructural error does not require reversal . . . . [*Id.* (citations omitted).]

Here, like in *Abraham*, the prosecutor's misstatement was minor, the trial court properly instructed the jury regarding the role of the prosecution in providing the law, and the trial court properly instructed the jury on the elements of the crime and the proof required. Consequently, given the relatively minor mistake and that "[j]urors are presumed to follow the court's instructions, and instructions are presumed to cure most errors," *Mullins*, 322 Mich App at 173, we find no reason for reversal. *Abraham*, 256 Mich App at 276. Accordingly, the prosecutor's statement does not constitute error requiring reversal.

Defendant next argues that the prosecutor committed misconduct by purposely admitting false evidence. Specifically, defendant contends that the prosecutor knew that the cellular telephone number associated with "Kev" in the January 2015 text messages did not belong to defendant, but still elicited testimony that attributed the incriminating texts to him. As with the other instances where defendant made a similar argument, he has failed to bear his burden of providing a factual basis for that assertion. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). The only evidence defendant provided that allegedly proved the cellular telephone

number in question did not belong to him, was a call log showing that a number he admits was his called the number associated with "Kev." As we have discussed, defendant's reliance on that evidence for definitive proof is not accurate. Thus, the evidence available supports that a telephone number in Russell's contacts under the name "Kev," which is admittedly defendant's nickname, sent and received incriminating text messages in January 2015. Consequently, the prosecutor merely sought the admission of evidence the prosecutor believed in good faith to be relevant and admissible—such was not error. *Dobek*, 274 Mich App at 70.

## VII. SUBSTITUTION OF COUNSEL

Defendant argues that the trial court abused its discretion by denying his requests for a new attorney. Defendant did, on several occasions in writing and orally on the record, request a new attorney or to represent himself. Each time, however, before the trial court decided those requests, defendant changed his mind and decided to continue with defense counsel. Stated differently, defendant affirmatively approved of defense counsel's representation before the trial court decided defendant's requests. Consequently, defendant waived this issue and the error is extinguished. *Jackson*, 313 Mich App at 420 (waiver occurs when a defendant affirmatively approves of an issue before the trial court, only to later argue that there was error on appeal); *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (when waiver occurs the error is extinguished).[8]

## VIII. SENTENCING

Defendant argues that his sentence of 65 to 90 years' imprisonment was disproportionate to the crime committed. We disagree.

"We review for an abuse of discretion whether a sentence is proportionate to the seriousness of the offense." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). A "trial court abuse[s] its discretion by violating the principle of proportionality . . . , which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (citation and quotation marks omitted).

Defendant argues that his sentence was disproportionate to the crime of which he was convicted—conspiracy to commit armed robbery. Defendant acknowledges that his sentence was within the minimum guidelines range of 270 to 900 months' ($22^{1}/_{2}$ to 75 years') or life imprisonment. "Because defendant's sentence was within the range provided under the advisory sentencing guidelines, his sentence was presumptively proportionate . . . ." *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018). "When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there

---

[8] Despite the waiver, we have also reviewed the entire record and note that, under the circumstances presented in this case, the trial court would not have abused its discretion in denying defendant's requests for a new attorney. *People v McFall*, 309 Mich App 377, 382-383; 873 NW2d 112 (2015).

was an error in scoring or the trial court relied on inaccurate information." *Schrauben*, 314 Mich App at 196. A defendant can "overcome the presumption that the sentence is proportionate" by presenting "unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks omitted).

Defendant does not challenge the scoring of the guidelines range or allege that the trial court relied on inaccurate information. Instead, defendant argues that his sentence has "unusual circumstances" under *Bowling*, 299 Mich App at 558. The first unusual circumstance relied upon by defendant is that one of the victims of the crime of which he was charged was a federal judge. This allegedly "unusual circumstance" is belied by the record, where the trial court made the following statement during the sentencing hearing:

> I do want any appellate court, however, to recognize in reviewing what takes place today that the sentence that I will be imposing is based on evidence that I think is overwhelming and shows evidence of the defendant's dangerousness to the community, really independent of what happened [to Judge Terrence Berg] on Oak Drive back on March 5th of last year.

Because the trial court specifically did not rely on the shooting of Judge Berg, of which defendant was acquitted, in reaching its sentencing decision, defendant's argument that Judge Berg's status as a victim was an unusual circumstance is not supported by the record and without merit. *Bowling*, 299 Mich App at 558.

Defendant's second alleged unusual circumstance is related to the first. Defendant argues that an unusual circumstance of his sentence was the fact that he was acquitted of AWIM. First, defendant does not explain how being acquitted of one of the crimes for which he was charged was somehow unusual—criminals are acquitted of some crimes and convicted of others quite regularly. Second, once again, the trial court specifically did not consider the AWIM charge, as noted in the foregoing quote by the trial court. Defendant was charged with AWIM for the shooting of Judge Berg and the trial court explicitly stated that it was not considering that event in imposing a sentence for defendant.

Therefore, the trial court did not consider either of defendant's alleged unusual circumstances, and thus, his argument is without merit. *Id.* Consequently, because defendant's sentence was within the minimum guidelines range and defendant did not show that the sentence was on the basis of scoring errors, inaccurate facts, or unusual circumstances, we must, and do, affirm the sentence. *Schrauben*, 314 Mich App at 196; *Bowling*, 299 Mich App at 558.

IX. CONCLUSION

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron

-13-